No. 25-5875

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES,
AFL-CIO, et al.,

Plaintiffs-Appellees,

v.

UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, et al.,

Defendants-Appellants.

_____

On Appeal from the United States District Court
for the Northern District of California

_____

## BRIEF FOR APPELLANTS
_____

BRETT A. SHUMATE
*Assistant Attorney General*

CRAIG H. MISSAKIAN
*United States Attorney*

MELISSA N. PATTERSON
JOSHUA M. KOPPEL
*Attorneys, Appellate Staff*
*Civil Division, Room 7212*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-4820*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

STATEMENT OF JURISDICTION ...................................................................2

STATEMENT OF THE ISSUE .........................................................................2

STATEMENT OF THE CASE ..........................................................................2

SUMMARY OF ARGUMENT.........................................................................9

STANDARD OF REVIEW .............................................................................11

ARGUMENT ...................................................................................................11

The District Court Lacked Subject-Matter Jurisdiction Over This Challenge To Federal Personnel Actions ......................................................................... 11

    A.    The CSRA Precludes District-Court Jurisdiction Over The Union Plaintiffs' Claims ...................................................................12

    B.    The District Court's Reasons For Exercising Jurisdiction Are Unsupported ...............................................................................17

CONCLUSION ............................................................................................... 27

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:** <span style="float:right">**Page(s)**</span>

*AFGE v. Secretary of the Air Force,*
716 F.3d 633 (D.C. Cir. 2013) .............................................................. 12, 13, 15, 16, 17

*AFGE v. Trump,*
139 F.4th 1020 (9th Cir. 2025) ............................................................................ 7, 18, 19

*AFGE v. Trump,*
929 F.3d 748 (D.C. Cir. 2019) ............................................................................................ 13

*AFGE v. U.S. OPM*:
No. 25-1677, 2025 WL 914823 (9th Cir. Mar. 26, 2025) ...................................... 4, 18
No. 25-1677, 2025 WL 2976744 (9th Cir. Sept. 29, 2025) .......................................... 9

*Association of Civilian Technicians, N.Y. State Council v. FLRA,*
507 F.3d 697 (D.C. Cir. 2007) ................................................................................... 15–16

*Axon Enter., Inc. v. Federal Trade Comm'n,*
598 U.S. 175 (2023) ..................................................................................................... 24

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013) ......................................................................................................... 4

*East Bay Sanctuary Covenant v. Biden,*
993 F.3d 640 (9th Cir. 2021) ................................................................................. 17, 18

*Elgin v. Department of the Treasury,*
567 U.S. 1 (2012) ....................................................................... 4, 12, 13, 14, 15, 20, 24

*FDIC v. FLRA,*
977 F.2d 1493 (D.C. Cir. 1992) ................................................................................. 16

*Free Enter. Fund v. Public Co. Acct. Oversight Bd.,*
561 U.S. 477 (2010) .................................................................................................. 22, 24

*Graham v. Ashcroft,*
358 F.3d 931 (D.C. Cir. 2004) ................................................................................. 26

*Karuk Tribe of Cal. v. U.S. Forest Serv.,*
681 F.3d 1006 (9th Cir. 2012) ................................................................................. 11

*New York v. McMahon,*
    784 F. Supp. 3d 311 (D. Mass.), *stay denied sub nom.,*
    *Somerville Pub. Schs. v. McMahon,* 139 F.4th 63 (1st Cir.),
    *stay granted,* 145 S. Ct. 2643 (2025) ................................................... 20, 20–21

*OPM v. AFGE,* 145 S. Ct. 1914 (2025) ..........................................................4

*Rodriguez v. Department of Veterans Affairs,*
    8 F.4th 1290 (Fed. Cir. 2021) ........................................................ 21

*Seila L. LLC v. CFPB,*
    591 U.S. 197 (2020) ........................................................................ 22

*Thunder Basin Coal Co. v. Reich,*
    510 U.S. 200 (1994) ........................................................................ 24

*United States v. Fausto,*
    484 U.S. 439 (1988) ................................................................. 14, 25

**Statutes:**

Judiciary Act of 1789,
    ch. 20, 1 Stat. 73 (1789) ...............................................................22

5 U.S.C. § 1204(a)(2) ........................................................................ 14

5 U.S.C. § 1212 ................................................................................ 14

5 U.S.C. § 1214 ................................................................................ 14

5 U.S.C. § 7105(a)(2) ........................................................................ 16

5 U.S.C. § 7116(a)(1) ........................................................................ 16

5 U.S.C. § 7116(a)(5) ........................................................................ 16

5 U.S.C. § 7116(a)(8) ........................................................................ 16

5 U.S.C. § 7118 ................................................................................ 16

5 U.S.C. § 7121(a) ............................................................................ 16

5 U.S.C. § 7121(b) ............................................................................ 16

5 U.S.C. § 7122(a) ................................................................................. 16

5 U.S.C. § 7123(a) ................................................................................. 16

5 U.S.C. § 7512 ..................................................................................... 21

5 U.S.C. § 7512(1) ................................................................................ 13

5 U.S.C. § 7513(d) ................................................................................ 21

5 U.S.C. § 7701(g) ................................................................................ 14

28 U.S.C. § 1291 ..................................................................................... 2

28 U.S.C. § 1331 ..................................................................................... 2

**Regulation:**

5 C.F.R. § 315.806 (2024) ...................................................................... 14

**Legislative Material:**

171 Cong. Rec. S6976 (daily ed. Oct. 7, 2025) .................................... 21

**Other Authorities:**

FLRA, *Charles Arrington*, https://www.flra.gov/about/flra-leadership/
  charles-arrington (last visited Jan. 9, 2026) ................................... 22

Order, *AFGE v. U.S. OPM*, No. 25-1677 (9th Cir. May 12, 2025),
  Dkt. 39.1 .................................................................................................. 6

## INTRODUCTION

In this suit challenging agencies' termination of probationary employees, the district court entered final judgment and granted a permanent injunction at the behest of federal labor unions that required, *inter alia*, that agencies send terminated probationary employees corrective notices stating that they were "not terminated on the basis of [their] personal performance."  ER-42.  That permanent injunction is substantially similar to a preliminary injunction previously entered by the court and appealed by the government, on which this Court received full briefing and heard oral argument.

The district court fundamentally misunderstood the factual record in this case, which demonstrates that the Office of Personnel Management (OPM) acted within its statutory authority to provide guidance to agencies on how to effectuate a presidential directive to reduce the size of the federal government.  But this Court need not confront the merits of plaintiffs' claims because its analysis should start and end with the district court's lack of jurisdiction over this federal personnel dispute.  The district court's permanent injunction suffers from the same fundamental flaw as its preliminary injunctions:  As explained in the government's prior briefing, the district court lacks subject-matter jurisdiction over this dispute because the Civil Service Reform Act (CSRA) channels plaintiffs' claims to the Federal Labor Relations Authority (FLRA) or the Merit Systems Protection Board (MSPB).

Because this Court has already received extensive briefing and heard oral argument on many of the relevant issues, and in the interest of judicial economy, the government does not repeat its arguments in full in this brief. Rather, in accordance with the Court's order dismissing the preliminary-injunction appeals as moot and directing briefing on the permanent injunction, the government will refer to and incorporates herein its briefing and argument on the preliminary-injunction appeals.

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's jurisdiction under 28 U.S.C. § 1331. ER-48. The district court granted plaintiffs' motion for summary judgment in part and issued a permanent injunction on September 12, 2025. ER-6–43. The court entered final judgment in favor of plaintiffs on September 13, 2025. ER-3–5. Defendants filed a timely notice of appeal on September 16, 2025. ER-105–106. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the district court lacked subject-matter jurisdiction over the claims of federal labor unions challenging federal employment actions.

## STATEMENT OF THE CASE

The Court is well familiar with the background of the case, and the government will not repeat the entire legal, factual, and procedural background here. The government instead refers to, and incorporates herein, the discussion in its briefs in the preliminary-injunction appeals. *See* Brief for Appellants at 3–14, *American Fed'n of*

*Gov't Emps. (AFGE) v. U.S. OPM*, No. 25-1677 (9th Cir. May 28, 2025), Dkt. 51.1 (PI Opening Br.); Supplemental Brief for Appellants at 3–11, *AFGE*, No. 25-1677 (May 22, 2025), Dkt. 44.1 (PI Suppl. Opening Br.).  The government presents only a brief recitation of the pertinent procedural history here.

**1.**  This suit was originally filed by unions representing federal employees and other organizations.  *See* 3-ER-449–482, *AFGE*, No. 25-1677 (May 22, 2025), Dkt. 45.[1]  Plaintiffs sued the Office of Personnel Management and OPM's Acting Director, and they later added numerous other federal agency defendants, alleging that OPM unlawfully directed the termination of probationary employees at agencies across the federal government and that the agencies unlawfully followed that directive.  *See* 2-ER-262–320, No. 25-1677.

On February 28, 2025, the district court issued a temporary restraining order directing OPM to stop its efforts to direct the termination of employees at six federal agencies.  3-ER-402, No. 25-1677.  In doing so, the court determined that it likely lacked jurisdiction to hear the union plaintiffs' claims because those claims "'are the vehicle by which they seek to reverse the removal decisions, to return [members] to federal employment, and to [collect] the compensation they would have earned but for the adverse employment action,'" and Congress has "channeled" such claims "to

---

[1] To avoid burdening the court, the government cites to the excerpts of record in the preliminary-injunction appeals at Docket Entry 45 when relevant material was contained therein.

the FLRA and MSPB." 3-ER-389–390, No. 25-1677 (alterations in original) (quoting *Elgin v. Department of the Treasury*, 567 U.S. 1, 22 (2012)). But the court took a different view as to the organizational plaintiffs, whose members are end-users and beneficiaries of government services. The court reasoned that, as to those plaintiffs, it likely had subject-matter jurisdiction because the organizational plaintiffs' claims concerning alleged reductions in government services causing harms to their organizational missions are "ill-suited to adjudication by a *labor* board." 3-ER-391, No. 25-1677. The government complied with the temporary restraining order and issued a memorandum expressly clarifying that "OPM is not directing agencies to take any specific performance-based actions regarding probationary employees" and that "[a]gencies have ultimate decisionmaking authority." 2-ER-376, No. 25-1677.

The following month, the district court issued a preliminary injunction ordering certain agencies to offer reinstatement to any terminated probationary employees. 1-ER-94–95, No. 25-1677. The government appealed and sought a stay, which a divided panel of this Court denied. *AFGE v. U.S. OPM*, No. 25-1677, 2025 WL 914823 (9th Cir. Mar. 26, 2025). The government then sought a stay from the Supreme Court. On April 8, 2025, the Supreme Court granted that motion, emphasizing that, "under established law," the "allegations of the nine non-profit-organization plaintiffs … are presently insufficient to support the organizations' standing." *OPM v. AFGE*, 145 S. Ct. 1914 (2025) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)).

4

Proceedings in the district court continued in the meantime. As particularly relevant here, the court reconsidered its earlier holding that it lacked subject-matter jurisdiction over the union plaintiffs' claims, and on March 24, 2025, the district court declared that it had jurisdiction over those claims and that its "earlier ruling to the contrary was mistaken." 2-ER-164, No. 25-1677. Among other things, the court reasoned that the unions' claims are outside the MSPB's and the FLRA's expertise because, in the court's view, they raise "standard issue[s] of administrative and constitutional law" and do not implicate the kind of "employer-agency policy choices that the MSPB or the FLRA commonly parse." 2-ER-166–167, No. 25-1677 (quotation marks omitted). The court also maintained that the unions' claims are "collateral to the types of claims brought before the MSPB or the FLRA" because they do not concern any "employer agency's purported decision to terminate any or all of its employees," but instead concern whether "OPM exceed[ed] its authority when it directed all federal agencies to terminate their probationers *en masse*." 2-ER-167–168, No. 25-1677.

On April 18, 2025, the district court granted a new preliminary injunction to the union plaintiffs. 1-ER-2–28, No. 25-1677. The court entered "[p]rovisional relief" prohibiting OPM "from ordering, directing, or telling any other federal agency to terminate the employment of any federal employee or group of federal employees" and prohibiting the other federal-agency defendants "from following any OPM order or direction to fire any agency employee" or using an "OPM template termination

letter." 1-ER-27, No. 25-1677.  The court also required agencies that had previously used OPM's template to either provide employees "with a written statement … that their termination was not 'performance' or fitness based but was made as part of a government-wide mass termination" or submit a declaration stating that "a particular termination was in fact carried out after an individualized evaluation of that employee's performance or fitness."  1-ER-27, No. 25-1677.  The government appealed and, in the meantime, complied with the new preliminary injunction.

The two preliminary-injunction appeals were consolidated, Order, *AFGE*, No. 25-1677 (May 12, 2025), Dkt. 39.1, and this Court heard argument on August 19, 2025.

**2.**  On September 12, 2025, the district court granted plaintiffs' motion for summary judgment in part and denied the government's cross-motion.  ER-6.

Although plaintiffs had expressly declined to challenge the sufficiency of the administrative record, Dist. Ct. Dkt. 222, at 2 n.3, and defendants had thus not addressed the issue, the district court spent nine pages addressing the sufficiency of the record, expressing its view that the administrative record was a "sham" but ultimately stating that the court would "rel[y] on that record," ER-12–21.

Addressing Article III standing, the court held that the union plaintiffs have standing against most defendant agencies and did not substantively address the standing of any other plaintiff.  ER-21–22 (reviewing evidence and finding that the union plaintiffs had no standing as to the Department of State, the National

Aeronautics and Space Administration (NASA), and the Office of Management and Budget (OMB) and that the "State of Washington's proofs" did "not move the needle as to those three agencies"). The court concluded that the termination of probationary employees harmed the unions' "operational funding" and frustrated their "core functions," and that the unions had representational standing to "stand in the shoes of their members, some of whom have been injured due to termination." ER-21.

The district court then reaffirmed its prior conclusion that it had subject-matter jurisdiction over this suit, asserting that "[n]o statutory scheme channels [the claims] into an administrative body." ER-23. The court largely incorporated its prior analysis, discussed in the government's briefs in the preliminary-injunction appeals. The court further asserted that its ruling was "reinforced" by this Court's denial of a stay in the first preliminary-injunction appeal in this case, this Court's denial of a stay in a different case involving a challenge to an Executive Order and memorandum relating to reductions-in-force, *AFGE v. Trump*, 139 F.4th 1020 (9th Cir. 2025), and the decisions of other district courts and the First Circuit in cases that the court thought similar. ER-23–26. The court also concluded that channeling was not required because, in the court's view, the Office of Special Counsel (OSC) has an "obvious conflict[] of interest," the MSPB "lack[ed] [a] quorum and [could] []not act," ER-27–28, and the FLRA had only two of three members and thus could not act

"where the two disagree," ER-26–29, which the district court reasoned left these forums "functionally impaired," ER-29.

Turning to the merits, the district court concluded that, except in one circumstance not implicated in this case, Congress has not authorized OPM "to direct terminations beyond its own walls." ER-32. In the court's view, the record established that OPM had directed other agencies to terminate their probationary employees and set up an exemption process through which agencies could request and receive exemptions from that directive. ER-32. The court rejected the government's arguments that OPM had not directed other agencies' employment decisions and instead given agencies guidance. ER-33–39. The court also found the OPM "directive" to be arbitrary and capricious because it supposedly directed the termination of employees without consideration of their performance. ER-40–41.

In terms of relief, the district court stated that it would normally order the reinstatement of terminated probationary employees, but it recognized that the Supreme Court has made clear that such relief would be inappropriate. ER-41. The court therefore issued a declaratory judgment that OPM lacked the authority to direct other agencies to terminate their probationary employees and violated the Administrative Procedure Act when it did so. ER-42. The court permanently enjoined OPM from telling any federal agency to terminate the employment of any federal employee (except as permitted by regulation) and enjoined the other defendant agencies (except the Department of State, NASA, OMB, and OPM) from following

8

any OPM direction to terminate any federal employee and from using an OPM template termination letter.  ER-42.  The court also required the defendant agencies as to whom the court found standing to update personnel files to reflect that terminations were not performance- or conduct-based, to issue corrective notices to terminated probationers, and to change the termination dates of certain probationary employees.  ER-42–43.

The district court entered final judgment for plaintiffs on September 13, 2025. ER-3–5.

**3.**  The government appealed the final judgment.  ER-105–106.  This court then dismissed the preliminary-injunction appeals as moot and assigned the final-judgment appeal to the same panel that heard the preliminary-injunction appeals. *AFGE v. US OPM*, No. 25-1677, 2025 WL 2976744 (9th Cir. Sept. 29, 2025).  The Court instructed that "the parties may refer to the filings previously made" in the preliminary-injunction appeals, and ordered that the briefing, record, and oral argument in those prior appeals shall be considered in the resolution of this appeal. *Id.* at *1.

## SUMMARY OF ARGUMENT

The district court exercised jurisdiction based on the standing of only the federal-labor-union plaintiffs.  But the court lacked subject-matter jurisdiction over the unions' claims because Congress has established a comprehensive system for

reviewing personnel actions taken against federal employees and labor–management disputes in the federal workplace.

As the government has explained in its prior briefing, the CSRA permits certain categories of employees to appeal specified personnel actions to the MSPB with subsequent judicial review in the U.S. Court of Appeals for the Federal Circuit. Probationary employees have fewer appeal rights under the CSRA, but the Supreme Court has made clear that this does not mean they can bypass the administrative-review scheme and seek judicial review initially in district courts. Congress has also instructed that unions representing federal employees may raise labor–management disputes before the FLRA, with subsequent judicial review in the courts of appeals. The claims that the union plaintiffs raise here are of the type that can be reviewed in those FLRA proceedings, and plaintiffs cannot end-run the scheme that Congress provided by raising their claims in this forum.

Contrary to the district court's assertions, this Court's precedent does not establish that the union plaintiffs can bring their claims in federal court in the first instance. The cases that the court cited did not address the claims of federal labor unions challenging the terminations of individual employees and seeking individual relief for those employees. Nor was the district court correct in asserting that the administrative review schemes are not currently functional. The vacancies at the MSPB and FLRA, for example, were temporary, and there is no indication that

10

Congress intended to set aside the CSRA's comprehensive review scheme during periods when those bodies have such vacancies.

## STANDARD OF REVIEW

This Court reviews the district court's grant of summary judgment de novo. *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1017 (9th Cir. 2012).

## ARGUMENT

### THE DISTRICT COURT LACKED SUBJECT-MATTER JURISDICTION OVER THIS CHALLENGE TO FEDERAL PERSONNEL ACTIONS

As the government has explained throughout this case, the district court's analysis of plaintiff's claims reflects a flawed understanding of the Office of Personnel Management's role in aiding the President and agencies in the management of the federal workforce. OPM acted well within its authority under the CSRA to provide guidance to agencies as to how they should carry out the President's directive to reduce the size of the federal workforce while still exercising their own authority to hire, retain, and terminate employees.

But this dispute over federal personnel matters does not belong in federal district court to begin with. The district court entered final judgment in favor of federal labor union plaintiffs directing agencies to take certain actions with respect to probationary employees' personnel files. But the CSRA channels the union's claims through a comprehensive statutory review scheme that deprives the district court of

subject-matter jurisdiction under Supreme Court precedents. The Court should reverse the judgment below.[2]

## A. The CSRA Precludes District-Court Jurisdiction Over The Union Plaintiffs' Claims

The district court's order on summary judgment concluded that the union plaintiffs have direct and representational standing that gives rise to district-court jurisdiction. ER-21. The government has previously explained that the court erred in exercising jurisdiction over the unions' claims because the Civil Service Reform Act, which includes the Federal Service Labor–Management Relations Statute (FSLMRS), established an "exclusive" scheme for administrative and judicial review of challenges to personnel actions taken against members of the civil service and disputes over federal labor–management relations. *Elgin v. Department of the Treasury*, 567 U.S. 1, 5, 8 (2012); *see also AFGE v. Secretary of the Air Force*, 716 F.3d 633, 638 (D.C. Cir. 2013) ("The FSLMRS provides the exclusive procedures by which federal employees and their bargaining representatives may assert federal labor-management relations claims."). The government incorporates herein its argument in the preliminary-

---

[2] The district court did not find that the organizational plaintiffs or Washington had standing. This Court therefore need not address those plaintiffs in reviewing the court's final judgment. In any event, the government maintains its earlier argument that the organizational plaintiffs and Washington lack standing, *see* PI Opening Br. 17–24; PI Suppl. Opening Br. 13 n.2; Reply Brief for Appellants at 3–9, *AFGE v. U.S. OPM*, No. 25-1677 (9th Cir. July 11, 2025), Dkt. 71.1 (PI Reply), and that the district court lacks subject-matter jurisdiction over their claims in any event, *see* PI Opening Br. 24–29; PI Suppl. Opening Br. 13 n.2.

12

injunction appeals, and, in the interest of judicial economy, it will not repeat those arguments in full. *See* PI Opening Br. 24–29; PI Suppl. Opening Br. 12–22; PI Reply 10–18.

In brief, through the CSRA, "Congress intentionally provided—and intentionally chose not to provide—particular forums and procedures for particular kinds of claims." *AFGE*, 716 F.3d at 636 (alterations and quotation marks omitted). Congress allowed certain individual federal employees who are affected by agency personnel decisions to challenge those actions "by litigating their claims through the statutory scheme in the context of [a] concrete" dispute, with limitations imposed by Congress on the kinds of claims and remedies available. *AFGE v. Trump*, 929 F.3d 748, 757 (D.C. Cir. 2019). The CSRA's remedies are "exclusive," and the statute precludes district-court jurisdiction over claims within the statute's scope. *Elgin*, 567 U.S. at 5; *see also AFGE*, 716 F.3d at 638.

The union plaintiffs' claims on behalf of their members are of the type that the CSRA channels to administrative review. Plaintiffs allege that OPM unlawfully directed the termination of federal employees across the government and that the agencies' own explanations for the terminations were pretextual. 2-ER-285–299, No. 25-1677; *see also* 1-ER-16, No. 25-1677. The CSRA's statutory review scheme expressly covers employees' challenges to their "removal." 5 U.S.C. § 7512(1). And the remedies that the unions sought, including reinstatement and correction of personnel files, go to the heart of the federal employer–employee relationship. "The

13

MSPB is authorized to order relief to prevailing employees, including reinstatement …." *Elgin*, 567 U.S. at 6 (citing 5 U.S.C. §§ 1204(a)(2), 7701(g)). The CSRA thus provides the exclusive means for bringing the claims asserted here, and it forecloses the unions from filing suit in district court on behalf of their terminated-employee members.

An individual federal employee who believes their termination was unlawful must litigate that claim through the CSRA's comprehensive scheme, limited to the rights and remedies provided by Congress. *See United States v. Fausto*, 484 U.S. 439, 455 (1988). As the government has previously explained (PI Opening Br. 25), Congress chose not to provide probationary employees the same appeal rights afforded to other employees. Probationary employees in the competitive service historically could appeal to the MSPB only in limited circumstances, such as to seek review of "a termination not required by statute which [the employee] alleges was based on partisan political reasons or marital status" or that "was not effected in accordance" with specified procedural requirements. 5 C.F.R. § 315.806 (2024). Probationary employees can also lodge complaints with OSC, which can investigate prohibited personnel practices. 5 U.S.C. §§ 1212, 1214.[3]

Probationary employees, like other federal employees, cannot avoid this "exclusive" scheme by filing suit to challenge employment actions in district court.

---

[3] Many probationary employees have availed themselves of these limited appeal rights to challenge the terminations at issue here before the MSPB.

*Elgin*, 567 U.S. at 13. For the same reason, federal unions may not frustrate the CSRA's integrated scheme by filing suit in district court to challenge the terminations on their members' behalf. Were that permitted, any unionized employee "could circumvent the CSRA's strictures by requesting that" their union file suit "outside the CSRA." *AFGE*, 716 F.3d at 639.

Nor can the unions file suit in district court asserting their own purported harms stemming from the federal government's employment decisions. The unions assert that because of the federal government's allegedly unlawful termination of probationary employees, they have ostensibly been prevented "from exercising [their] core functions as employee representative[s]," including engaging in "collective bargaining and providing counseling, advice, and representation to represented employees." 2-ER-299, No. 25-1677. But the FSLMRS "governs federal labor-management relations" and "establishes a comprehensive scheme to deal with labor relations in federal employment" by channeling adjudication of unions' claims to the FLRA followed by direct review in the court of appeals. *AFGE*, 716 F.3d at 636 (quotation marks omitted). Like other provisions of the CSRA, the FSLMRS "regime is exclusive," and a union "cannot circumvent [it] by instead bringing a suit in district court." *Id.* at 636–637.

The FSLMRS provides several mechanisms for unions to challenge management actions—at least two of which are available here. *See AFGE*, 716 F.3d at 636–638; *Association of Civilian Technicians, N.Y. State Council v. FLRA*, 507 F.3d 697,

699 (D.C. Cir. 2007). First, if the unions believe that an agency has terminated probationary employees to interfere with the union's representation of those employees or to avoid procedures required under a collective-bargaining agreement—such as those related to agency reductions in force, *cf.* 2-ER-282–286, No. 25-1677 (alleging that agencies did not "comply[] with [reduction-in-force] procedures")—the unions can file unfair-labor-practice charges before the FLRA. *See* 5 U.S.C. §§ 7116(a)(1), (5), (8), 7118. Congress has granted the FLRA "broad … discretion … to fashion appropriate remedies," including a "*status quo ante* remedy." *FDIC v. FLRA*, 977 F.2d 1493, 1498 (D.C. Cir. 1992); *see also* 5 U.S.C. § 7105(a)(2). The FLRA's final order regarding an unfair-labor-practice charge is subject to judicial review in a court of appeals. 5 U.S.C. § 7123(a). Second, the unions could raise an unfair-labor-practice claim using the grievance and arbitration procedures that are in every collective-bargaining agreement. *See id.* § 7121(a), (b). The arbitral award would be subject to review by the FLRA, *id.* § 7122(a), and the FLRA's order would then be subject to judicial review, *id.* § 7123(a) (permitting judicial review of an FLRA order reviewing an arbitral award if the order "involves an unfair labor practice").

Like other CSRA provisions, the FSLMRS "can preclude a claim from being brought in a district court even if it forecloses the claim from administrative review." *AFGE*, 716 F.3d at 638. Here, where the unions do have a statutory method of review, the preclusive effect of the FSLMRS is even more apparent. While the unions "may not prevail using one of these procedures" or may "prefer to challenge" the

terminations in district court, they cannot bring their claims "outside the CSRA's exclusive remedial scheme." *Id.*

### B. The District Court's Reasons For Exercising Jurisdiction Are Unsupported

The summary-judgment decision identifies two grounds that the district court thought confirmed its earlier holding that it had jurisdiction over the unions' claims. First, the court purported to find support in the precedent of this Court and other courts. Second, the court asserted jurisdiction because it thought the MSPB, FLRA, and OSC are not functioning properly. Both of these justifications fail to overcome the fundamental problem that the CSRA precludes district-court jurisdiction over challenges to personnel actions taken against members of the civil service and disputes over labor–management relations in the federal workplace.

**1.** The district court first asserted that this Court approved the exercise of jurisdiction over the organizational plaintiffs' claims in the course of denying a stay of the first preliminary injunction, which ran only to the organizational plaintiffs. ER-23. That fails for numerous reasons. To start, the stay panel's limited and "predictive analysis" of subject-matter jurisdiction turned on the "probabilistic" standard governing motions to stay a preliminary injunction pending appeal. *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 661 & n.3 (9th Cir. 2021). In conducting that inquiry, the stay panel was "predicting the likelihood of success of the appeal." *Id.* at 660. Here, by contrast, the Court is resolving the actual merits of the claims on appeal

from the court's final judgment, and the stay panel's predictive analysis has no precedential effect on this Court's resolution of that "different" inquiry. *Id.*

Nor does the stay panel's denial of a stay have any persuasive force here. The stay panel did not conduct any substantive analysis in concluding that the government had not demonstrated a likelihood of showing that "Congress has channeled the organizational plaintiffs' claims to administrative agencies." *AFGE v. U.S. OPM*, No. 25-1677, 2025 WL 914823, at *1 (9th Cir. Mar. 26, 2025). And in all events, the stay panel's analysis was confined to the organizational plaintiffs, which were the only subject of the court's first injunction. Indeed, at the time the district court granted a preliminary injunction, the district court had held that it likely lacked jurisdiction over the claims of the union plaintiffs. 3-ER-389–391, No. 25-1677. Neither the government's stay motion nor this Court's stay order therefore had any occasion to address whether the CSRA precludes district-court jurisdiction over the unions' claims. And while the stay panel was wrong even as to the organizational plaintiffs' claims, the exercise of jurisdiction over claims brought by unions representing the affected federal employees plainly presents a distinct question. For the reasons already explained, the CSRA and FLSMRS make clear that the unions' claims are of the type Congress intended to be channeled.

The district court's reliance on *AFGE v. Trump*, 139 F.4th 1020 (9th Cir. 2025), was also misplaced. *See* ER-23–24. The government has previously explained why that stay decision in a different case is not binding here and why that case is

18

distinguishable from this case, in any event. *See* PI Reply 16–18. As previously explained, in that case, a group of plaintiffs including unions brought *ultra vires* and Administrative Procedure Act claims challenging an executive order and an associated guidance memorandum that directed federal agencies to prepare to initiate reductions in force and sought relief to have those documents set aside and prevent agencies from implementing the order to prepare for reductions in force. *See* Complaint at 104–105, *AFGE v. Trump*, No. 25-cv-03698 (N.D. Cal. Apr. 28, 2025). In denying a stay, this Court concluded that the plaintiffs' claims fall outside the scope of the CSRA's review provisions because the plaintiffs were not challenging any "employment decisions with respect to individual employees," but rather the "constitutional and statutory authority" of the President, OMB, OPM, and the Department of Government Efficiency "to direct the federal agencies to take such actions in the first place." 139 F.4th at 1031. The stay panel noted, moreover, that in the cases in which a court channeled a constitutional or statutory claim through the CSRA's remedial scheme, the plaintiffs had raised at least one claim properly within the jurisdiction of the MSPB or FLRA. *Id.*

Although the *AFGE v. Trump* stay panel was wrong to conclude that the district court in that case likely had subject-matter jurisdiction over the claims in that case, regardless, the district court here plainly lacks subject-matter jurisdiction to resolve disputes by unions challenging employment decisions with respect to individual employees. Plaintiffs squarely allege that the termination of probationary

19

employees was unlawful because those terminations were purportedly effectuated at the direction of OPM and arbitrary and capricious. *See, e.g.*, ER-92 ("The actions of OPM and its Acting Director, including … requiring federal agencies to terminate probationary employees, violate the Administrative Procedure Act because they are inconsistent with law …."); ER-94 (alleging that the "actions of OPM and its Acting Director, including … requiring federal agencies to terminate probationary employees, violate the APA because they are arbitrary and capricious"). And plaintiffs specifically sought in their complaint the reinstatement of terminated employees, ER-96—a remedy squarely within the authority of the MSPB and FLRA. *See Elgin*, 567 U.S. at 6 ("The MSPB is authorized to order relief to prevailing employees, including reinstatement, backpay, and attorney's fees."). "A challenge to removal is precisely the type of personnel action regularly adjudicated by the MSPB and the Federal Circuit within the CSRA scheme." *Id.* at 22. Furthermore, the district court's final relief here requires the modification of personnel files—an order that goes directly to the heart of the employer–employee relationship.

The district court's reliance on out-of-Circuit cases is likewise unavailing. For example, the court cited *New York v. McMahon*, 784 F. Supp. 3d 311 (D. Mass.), *stay denied sub nom.*, *Somerville Public Schools v. McMahon*, 139 F.4th 63 (1st Cir.), *stay granted*, 145 S. Ct. 2643 (2025), but that case was brought by States, school districts, non-profit organizations, and labor unions representing public-school employees to challenge an alleged effort to shutter the Department of Education. *See id.* at 338–

339. The case was not brought by federal employees or federal unions representing those employees—whose claims challenging their terminations would clearly have been channeled through the CSRA's remedial scheme.

**2.** Second, the district court expressed what it viewed as current "impairment[s]" of the OSC, MSPB, and FLRA and reasoned that those perceived deficiencies provided a "further basis for subject-matter jurisdiction." ER-26. The court concluded that those bodies "have stopped doing as much work as before (FLRA), have stopped doing any work at all (MSPB), or have started working for the other side (OSC)," and it suggested that it therefore has jurisdiction. ER-29. Both the district court's premise and its conclusion are flawed.

**a.** As to the premise, the district court erred in concluding that the MSPB, FLRA, and OSC are not functioning properly. Among other functions, the MSPB reviews complaints from terminated federal employees. *See* 5 U.S.C. §§ 7512, 7513(d). At the time that the district court issued its summary-judgment decision, the MSPB lacked a quorum and could not resolve cases. "The absence of a quorum, however, is a temporary circumstance, not a structural defect …." *Rodriguez v. Department of Veterans Affairs*, 8 F.4th 1290, 1309 (Fed. Cir. 2021). Indeed, on October 7, 2025, the Senate confirmed the President's appointee to the MSPB, *see* 171 Cong. Rec. S6976 (daily ed. Oct. 7, 2025), restoring a quorum to the Board. Furthermore, contrary to the district court's assertion, the government has not argued "that the MSPB is 'constitutionally intolerable.'" ER-28. Rather, the government has argued elsewhere

that a district-court order was "constitutionally intolerable" where it ordered the reinstatement of MSPB members whom the President had determined should no longer be entrusted with executive power. Brief for Appellants at 2-3, *Harris v. Bessent*, No. 25-5037 (D.C. Cir. Mar. 27, 2025). And the Supreme Court has repeatedly held that unconstitutional removal protections do not, by themselves, void the statutory scheme. *See, e.g.*, *Seila L. LLC v. CFPB*, 591 U.S. 197, 234–235 (2020) (plurality opinion); *Free Enter. Fund v. Public Co. Acct. Oversight Bd.*, 561 U.S. 477, 508–509 (2010).

The district court also erred in concluding that the FLRA "is functionally impaired as a pathway to relief" because it had only two members at the time. ER-29.[4] The district court reasoned that "where the two disagree," a split vote would result, and the court concluded that in that event "two is no better than one or none." ER-29. But it cannot be the case that an adjudicatory body can be deemed non-functional whenever it has an even number of members. While an odd number of members usually prevents a tie vote, such a number is by no means a requirement for an entity to function. After all, the Judiciary Act of 1789 established a six-member Supreme Court, *see* ch. 20, 1 Stat. 73 (1789), and that did not impermissibly impair the right to judicial review established by the Constitution.

---

[4] The FLRA gained a third member on January 6, 2026. *See* FLRA, *Charles Arrington*, https://www.flra.gov/about/flra-leadership/charles-arrington (last visited Jan. 9, 2026).

The district court's reasoning concerning OSC is similarly erroneous: It concluded that the "OSC pathway to relief is functionally impaired" because it thought that the appointment of a "government employer to investigate allegations against government employers creates obvious conflicts of interest." ER-27. But as the head of OSC, the Special Counsel always has a role as a government employer, and the district court cited no case suggesting that the office's role is inherently "impaired" because it investigates allegations of wrongdoing within the government. Instead, the court's reasoning appears to rest on its disagreement with the President's choice of whom to appoint as Acting Special Counsel and its disagreement with the Acting Special Counsel's expressed views. The court emphasized that the Acting Special Counsel has opined, in disagreement with the previous Special Counsel, that agencies have properly terminated probationary employees. ER-27. But the Acting Special Counsel's disagreement with the previous Special Counsel and the district court on a legal question does not signal a structural flaw in the CSRA scheme. Furthermore, contrary to the district court's assertion, the government has not argued that OSC is constitutionally defective such that it cannot fulfill its statutory duties; rather, as with the MSPB and FLRA, the government has argued that the Special Counsel's tenure protection is unconstitutional. *See* Defendants' Memorandum of Points and Authorities in Support of Their Motion for Summary Judgment at 10, *Dellinger v. Bessent*, No. 25-cv-00385 (D.D.C. Feb. 21, 2025).

**b.** In all events, as to the district court's conclusion, the court erred in finding that the purported "impairment" of the MSPB, FLRA, and OSC permitted the court to exercise jurisdiction over plaintiffs' claims. The relevant question is whether Congress intended the district courts to be the forum for these claims brought by federal unions, or whether Congress intended such claims to proceed through the statutory review scheme. *See Axon Enter., Inc. v. Federal Trade Comm'n*, 598 U.S. 175, 186 (2023) ("The ultimate question is how best to understand what Congress has done—whether the statutory review scheme, though exclusive where it applies, reaches the claim in question."). And *Thunder Basin* instructs that congressional intent "to preclude initial judicial review is determined from the statute's language, structure, and purpose, its legislative history, and whether the claims can be afforded meaningful review." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994) (citation omitted); *see also Elgin*, 567 U.S. at 10 (analyzing "the CSRA's text, structure, and purpose"). In other words, the question of congressional intent depends upon whether Congress has "create[d] procedures 'designed to permit agency expertise to be brought to bear on particular problems.'" *Free Enter. Fund*, 561 U.S. at 489. If so, then those procedures "are to be exclusive." *Id.* That legal inquiry into the language and structure of the statute Congress enacted leaves no room for an *ad hoc* factual analysis of whether the statute has been effectively implemented after its enactment. *See Axon Enter.*, 598 U.S. at 185.

24

As already discussed, the Supreme Court has repeatedly held that the CSRA is designed to be exclusive. In *Fausto*, the Court relied on "the statutory language" and "the structure of the statutory scheme" to conclude that Congress intended to bar excepted service employees from seeking judicial review of adverse employment actions. 484 U.S. at 449. And in *Elgin*, the Court looked to "the CSRA's text, structure, and purpose" to conclude that Congress likewise intended to preclude constitutional challenges to covered actions. The district court's new factual inquiry into how the scheme Congress established currently functions cannot be reconciled with the straightforward legal test established in those decisions.

When Congress enacted the CSRA to establish a "comprehensive system for reviewing personnel action taken against federal employees," *Fausto*, 484 U.S. at 455, it surely understood that there may be times when, due to a delay or failure of the Senate in confirming a President's nominees, the MSPB or FLRA would lack a quorum or have an equal number of members, and that certain federal judges might sometimes disagree with the Special Counsel about questions of personnel law. Yet there is no indication that Congress intended that federal employees or their unions could bring their personnel claims directly in federal court at such times, bypassing the statutory review scheme.

In the district court's view, a federal employee or union could evade the statutory review scheme any time the MSPB or FLRA lacks a quorum, even for a short period of time, or has an even number of members. Even more sweeping,

25

under the district court's logic, a federal employee or union could come to court any time there might be a difference in opinion as to how effective the President's nominees are and whether the offices are functioning as "intended" as a court might see it. That is a plainly erroneous conclusion, and it would render the CSRA's comprehensive statutory review scheme exceedingly porous. After all, "it is the comprehensiveness of the statutory scheme involved, not the 'adequacy' of specific remedies thereunder, that counsels judicial abstention." *Graham v. Ashcroft*, 358 F.3d 931, 935 (D.C. Cir. 2004) (Roberts, J.) (quotation marks omitted). If Congress concludes that occasional vacancies at the MSPB or FLRA or the President's selection of an Acting Special Counsel is problematic, that is reason for Congress to amend the statute—not for courts to ignore Congress's clear intent to preclude district-court jurisdiction.

## CONCLUSION

For the foregoing reasons, the judgment below should be reversed.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

CRAIG H. MISSAKIAN
  *United States Attorney*

MELISSA N. PATTERSON

  *s/ Joshua M. Koppel*
JOSHUA M. KOPPEL
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7212*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-4820*
  *joshua.m.koppel@usdoj.gov*

January 2026

27

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Circuit Rule 32-1(a) because it contains 6,234 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Joshua M. Koppel*
Joshua M. Koppel