No. 25-5875

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

American Federation of Government Employees, AFL-CIO, et al.
*Plaintiff-Appellees*,
v.
The Office of Personnel Management, et al.
*Defendants-Appellants*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
No. 3:25-cv-01780-WHA
The Honorable Judge William H. Alsup

_____

### PLAINTIFFS-APPELLEES' ANSWERING BRIEF

_____

Scott A. Kronland
Stacey M. Leyton
Eileen B. Goldsmith
Danielle E. Leonard
Robin S. Tholin
James Baltzer
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Tel.: (415) 421-7151
dleonard@altber.com

*Attorneys for Plaintiff-Appellee Organizations\**
*[additional counsel on following page]*

Norman L. Eisen
Pooja Chaudhuri
STATE DEMOCRACY DEFENDERS
FUND
600 Pennsylvania Avenue SE #15180
Washington, DC 20003
Tel: (202) 594-9958
Norman@statedemocracydefenders.org
Pooja@statedemocracydefenders.org

*Attorneys for Plaintiff-Appellee
Organizations\**

Teague Paterson
Matthew Blumin
AMERICAN FEDERATION OF
STATE, COUNTY, AND MUNICIPAL
EMPLOYEES
1625 L Street, N.W.
Washington, D.C.  20036
Tel: (202) 775-5900
TPaterson@afscme.org
MBlumin@afscme.org

*Attorneys for Plaintiff-Appellee
American Federation of State County
and Municipal Employees (AFSCME)*

Rushab Sanghvi
AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES
80 F Street, NW
Washington, DC 20001
Tel: (202) 639-6426
Sanghr@afge.org

*Attorneys for Plaintiff-Appellee
American Federation of Government
Employees (AFGE)*

Tera M. Heintz
Cristina Sepe
Cynthia Alexander
Deputy Solicitors General
OFFICE OF THE WASHINGTON
STATE ATTORNEY GENERAL
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
tera.heintz@atg.wa.gov
cristina.sepe@atg.wa.gov
cynthia.alexander@atg.wa.gov

*Attorneys for Plaintiff-Appellee State
of Washington*

*Plaintiff-Appellee Organizations are the American Federation of Government Employees, AFL-CIO, American Federation of State County and Municipal Employees, AFL-CIO, AFGE Local 2110, American Federation of Government Employees Local 1216, United Nurses Associations of California/Union of Health Care Professionals, AFSCME, AFL-CIO, American Public Health Association, Association of Flight Attendants-CWA, AFL-CIO, American Geophysical Union, Point Blue Conservation Science, Climate Resilient Communities, Main Street Alliance, Common Defense Civic Engagement, Coalition to Protect Americas National Parks, Western Watersheds Project, Vote Vets Action Fund Inc.

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT .........................................1

STATEMENT OF JURISDICTION ........................................................5

STATEMENT OF THE ISSUES ..........................................................5

STATEMENT OF THE CASE..............................................................5

   I.   Relevant Statutory Authorities ......................................5

   II.   The OPM Mass Termination Orders ...............................8

   III.   Plaintiffs Challenge OPM's Directives .....................11

   IV.   Summary Judgment on Plaintiffs' APA Claims Against OPM .................15

     A.   *The district court's jurisdictional conclusions*........................15

     B.   *The district court holds that OPM violated the APA* .............................18

     C.   *The district court grants final APA relief* ................................19

STANDARD OF REVIEW ................................................................20

ARGUMENT ............................................................................21

   I.   *AFGE v. Trump*'s Jurisdictional Analysis Binds This Court.....................22

   II.   This Court Correctly Concluded that Congress Did Not Channel APA Claims Against OPM's Government-Wide Directives .......................................30

     A.   Courts presume that Congress intended for the actions of administrative agencies to be judicially reviewable. ....................................................30

     B.   The *Thunder Basin* factors support the district court's exercise of jurisdiction. ...........................................................................34

   III.   Plaintiffs' Claims Are Not Channeled Merely Because Some of the Relief Here Awarded Overlaps with Relief Sometimes Awarded by the MSPB and FLRA ....................................................................................49

CONCLUSION ...........................................................................52

CERTIFICATE OF COMPLIANCE ........................................................55

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abbott Labs. v. Gardner*,
  387 U.S. 136 (1967).............................................................................31

*AFGE v. OPM*,
  771 F.Supp.3d 1127 (N.D. Cal. 2025)...................................15, 17, 25

*AFGE v. OPM*,
  No. 25-1677, 2025 WL 914823 (9th Cir. Mar. 26, 2025) ...........13, 29

*AFGE v. Sec'y of Air Force*,
  716 F.3d 633 (D.C. Cir. 2013) ..........................................................37

*AFGE v. Trump*,
  139 F.4th 1020 (9th Cir. 2025) ....................................................*passim*

*AFGE v. Trump*,
  145 S. Ct. 2635 (2025)...........................................................17, 28, 29

*AFGE v. Trump*,
  Case No. 25-4014, __ F.4th __, 2026 WL 534591 (9th Cir. Feb.
  26, 2026) ......................................................................................*passim*

*Alexander v. Sandoval*,
  532 U.S. 275 (2001)...........................................................................33

*Amazon.com Servs., LLC v. Teamsters Amazon Nat'l Negotiating
  Committee*,
  163 F.4th 624 (9th Cir. 2025) ...........................................................30

*Axon Enterprise, Inc. v. Federal Trade Commission*,
  598 U.S. 175 (2023)....................................................................*passim*

*Bennett v. Spear*,
  520 U.S. 154 (1997)...............................................................39, 42, 46

-ii-

*Block v. Community Nutrition Institute,*
    467 U.S. 340 (1984) ............................................................. 51

*Bowen v. Michigan Academy of Family Physicians,*
    476 U.S. 667 (1986) ...................................................... *passim*

*Cmty. Legal Servs. in E. Palo Alto v. United States Dep't of Health &*
    *Hum. Servs.,*
    137 F.4th 932 (9th Cir. 2025) .............................................. 48

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.,*
    603 U.S. 799 (2024) ............................................................. 49

*Crime Justice & Am., Inc. v. Honea,*
    876 F.3d 966 (9th Cir. 2017) .............................................. 26

*Dep't of Commerce v. New York,*
    588 U.S. 752 (2019) ...................................................... 31, 40

*Department of State v. AIDS Vaccine Advocacy Coalition,*
    145 S.Ct. 753 (2025) ........................................................... 29

*Driftless Area Land Conservancy v. Valcq,*
    16 F.4th 508 (7th Cir. 2021) .......................................... 49, 50

*East Bay Sanctuary Covenant v. Biden,*
    993 F.3d 640 (9th Cir. 2021) ..................................... 3, 27, 28

*Elgin v. Dep't of Treasury,*
    567 U.S. 1 (2012) ......................................................... *passim*

*Epic Sys. Corp. v. Lewis,*
    584 U.S. 497 (2018) ............................................................. 44

*Feds for Medical Freedom v. Biden,*
    63 F.4th 366 (5th Cir. 2023) (en banc), *cert. granted, judgment*
    *vac'd on other grounds,* 144 S.Ct. 480 (2023) ...................... 46, 47, 48

*Free Enterprise Fund v. Public Co. Accounting Oversight Bd.,*
    561 U.S. 477 (2010) ................................................... 37, 38, 41

*Gonzalez v. Arizona*,
　　677 F.3d 383 (9th Cir. 2012) (en banc) ............................................27

*J.I. Case Co. v. Borak*,
　　377 U.S. 426 (1964)...........................................................................33

*L.J. by & through Hudson v. Pittsburg Unified Sch. Dist.*,
　　850 F.3d 996 (9th Cir. 2017) .............................................................21

*Lake v. Ohana Mil. Communities, LLC*,
　　14 F.4th 993 (9th Cir. 2021) ..............................................................21

*Loper Bright Enter. v. Raimondo*,
　　603 U.S. 369 (2024)...........................................................................44

*Mach Mining, LLC v. EEOC*,
　　575 U.S. 480 (2015)...........................................................................22

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
　　567 U.S. 209 (2012).........................................................32, 47, 51, 52

*McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*,
　　606 U.S. 146 (2025)...............................................................31, 33, 45

*McMahon v. New York*,
　　145 S.Ct. 2643 (2025).......................................................................29

*Miller v. Gammie*,
　　335 F.3d 889 (9th Cir. 2003) (en banc) ............................................29

*Mims v. Arrow Fin. Servs., LLC*,
　　565 U.S. 368 (2012)...........................................................................45

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
　　463 U.S. 29 (1983).............................................................................19

*Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*,
　　567 F.3d 521 (9th Cir. 2009) .............................................................14

*Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., OSHA*,
595 U.S. 109 (2022) ................................................................6

*Nat'l Institutes of Health v. Am. Pub. Health Ass'n*,
606 U.S. __, 145 S.Ct. 2658 (2025) ..............................31, 32

*Nat'l TPS All. v. Noem*,
166 F.4th 739 (9th Cir. 2026) .......................................48, 49

*New York v. Kennedy*,
155 F.4th 67 (1st Cir. 2025) ................................................29

*NTEU and Dep't of Treasury, IRS*,
60 F.L.R.A. 782 (Mar. 29, 2005) ...........................8, 10, 36

*Nw. Env't Def. Ctr. v. Bonneville Power Admin.*,
477 F.3d 668 (9th Cir. 2007) ..............................................50

*OPM v. AFGE*,
Case No. 24A904, 145 S.Ct 1914 (2025) ..................5, 13, 29

*Rhode Island v. Trump*,
2025 WL 3251113 (D.R.I. Nov. 21, 2025) ..........................29

*Sackett v. EPA*,
566 U.S. 120 (2012) ...............................................31, 38

*San Francisco Herring Ass'n v. Dep't of the Interior*,
946 F.3d 564 (9th Cir. 2019) ..............................................39

*Thunder Basin Coal Co. v. Reich*,
510 U.S. 200 (1994) ......................................................*passim*

*Tri-Valley CARES v. U.S. Dep't of Energy*,
671 F.3d 1113 (9th Cir. 2012) ...............................15, 16, 22

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
578 U.S. 590 (2016) ...............................................31, 38

*United States v. Fausto*,
484 U.S. 439 (1988) ......................................................*passim*

*Wilkins v. United States*,
  13 F.4th 791 (9th Cir. 2021) ............................................................21

*In re Zermeno-Gomez*,
  868 F.3d 1048 (9th Cir. 2017) ..........................................................27

**Federal Statutes**

5 U.S.C.
  § 105 .................................................................................................6
  § 553 .................................................................................................7
  §§ 701-706 ......................................................................................44
  § 704 ...............................................................................................38
  § 706 ..............................................................................40, 47, 49
  §§ 1101-1105 ....................................................................................5
  § 1103 ..........................................................................................5, 6
  § 1105 ....................................................................................6, 7, 44
  § 3101 ...............................................................................................6
  § 4304 ...............................................................................................6
  § 4305 ...............................................................................................6
  § 7103 .............................................................................................35
  § 7105 .........................................................................................8, 35
  § 7116 .............................................................................................35
  § 7117 ...................................................................................8, 36, 45
  § 7118 ...............................................................................................8
  § 7123 .........................................................................................8, 35
  § 7134 ...............................................................................................6
  § 7512 .........................................................................................7, 34
  § 7513 ...............................................................................................7
  § 7514 ...............................................................................................6
  § 7701 .........................................................................................7, 34
  § 7703 ...............................................................................................7

8 U.S.C.
  § 1254a ...........................................................................................48

10 U.S.C.
  § 113 .................................................................................................6

28 U.S.C.
    § 1291 ................................................................................................5
    § 1331 ..........................................................................................5, 45

38 U.S.C.
    § 303 ..................................................................................................6
    § 510 ..................................................................................................6

**Other Authorities**

5 C.F.R. § 5.3 ......................................................................................20

5 C.F.R. § 315.803 .............................................................................19

5 C.F.R. § 315.804 .......................................................................11, 19

Public Law 95-454, § 201 (1978) ........................................................6

H.R. Rep. No. 1980, 79th Cong., 2d Sess., p. 275 (1946) .................32

S. Rep. No. 752, 79th Cong., 1st Sess., p. 212 (1945) ......................32

Fed. R. Civ. P. 19(a)(1)(A) ..................................................................6

## INTRODUCTION AND SUMMARY OF ARGUMENT

As of January 2025, the federal government employed hundreds of thousands of individuals in "probationary" periods across hundreds of agencies. This category of employment includes employees who have been recently promoted, recently transferred, or newly hired, ranging from directors running offices with decades of experience to recent college graduates.

Beginning in January 2025, Defendant Office of Personnel Management ("OPM") developed a plan to downsize the federal workforce by ordering other federal agencies to terminate their probationary employees *en masse*, because these employees, in OPM's view, lacked the right to appeal that decision. OPM executed this plan in early February 2025 by ordering *every* federal agency to fire *all* probationary employees not deemed "mission critical" on the false pretext of poor performance, using a form letter drafted by OPM falsely invoking performance, and to do so by a specific deadline.

The district court found, and Defendants do not contest on this appeal, the following key facts: ***first***, "OPM decided who to fire"; ***second***, "OPM decided when to fire"; and ***third***, "OPM directed agencies to fire under false pretense." ER-7–10.  Implementation of OPM's directives immediately wreaked havoc across the government, upending lives and agencies' functioning, as agencies followed these orders and indiscriminately fired over 25,000 employees.  The directives, moreover, were undeniably unlawful.

-1-

OPM conceded in the district court, and makes no contrary argument here, that it lacks any authority to direct other federal agencies to terminate their probationary employees—much less to direct them to do so on a false pretext of deficient performance.  Opening Brief at 11-26; *see also* Case No. 25-1677, Dkt. 61.1 at 2.  In granting summary judgment, the district court concluded that OPM did just that: it "directed the termination of over 25,000 probationers across the federal government 'based on [their] performance'… without *any* consideration of actual performance or conduct, or any 'rational connection between the facts found and the choice made.'"  ER-31–41 (emphasis in original) (citations omitted). Under well-established law, those OPM actions were final, exceeded authority, and were arbitrary and capricious, in violation of the Administrative Procedure Act ("APA").  As final APA relief, the district court set aside OPM's mass termination directive as unlawful, permanently enjoined OPM from directing agencies to fire their probationary employees again, and entered ancillary relief to further unwind OPM's unlawful acts, by requiring the correction of terminated probationers' personnel files so that their records would no longer reflect OPM's falsehood that they were terminated for performance reasons.

In this appeal, OPM has entirely waived arguments as to the district court's factual findings or the merits of Plaintiffs' APA claims, thereby conceding that OPM did order federal agencies to do exactly what the district court found. Instead, OPM relies on a single argument: that the 1978 Civil Service Reform Act ("CSRA"), and its labor-management component, the Federal Service Labor-

Management Relations Statute ("FSLMRS"), enacted decades after the APA, silently stripped federal courts of express jurisdiction to hear Plaintiffs' APA claims against OPM, because these claims involve what OPM terms "the federal government's employment decisions."  Opening Brief at 15.

OPM's sweeping jurisdictional argument must be rejected.  First, it is foreclosed by this Court's published decision in *AFGE v. Trump*, 139 F.4th 1020 (9th Cir. 2025)—a "very similar" case (*id.* at 1031) that is "binding as precedent for other panels deciding the same issue." *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 660-62 (9th Cir. 2021).  *AFGE v. Trump* held that the CSRA did not impliedly remove federal courts' express jurisdiction to hear APA challenges to OPM's government-wide directives to federal agencies regarding mass terminations. 139 F.4th at 1028, 1030-33.  That holding directly controls, and OPM's efforts to evade it lack merit.  *Infra* at 22-29.

Second, this Court in *AFGE v. Trump*, and the district court below, were correct to reject the implied preclusion arguments that OPM makes here.  *Infra* at 29-49.  Those arguments are irreconcilable with the statutory text of the CSRA, which expressly subjects OPM to the APA when it takes action affecting federal employees outside its own office—as it indisputably did here.  They are also incompatible with applicable Supreme Court precedent, which enshrines a "strong presumption" of judicial review of government action and imposes a "heavy burden" on any agency that seeks to evade it, particularly in the context of APA claims.  Under *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), because

-3-

Plaintiffs' claims for APA relief cannot ever be heard by administrative agencies created by the CSRA, are wholly collateral to the substance and procedures within those agencies' jurisdiction, and fall entirely outside their expertise, they are not the "type" of claims that are impliedly precluded. As with another channeling argument recently rejected by this Court, these APA claims are "best viewed as outside the statute's scope," and therefore properly within the district court's jurisdiction. *AFGE v. Trump*, Case No. 25-4014, __ F.4th __, 2026 WL 534591 at *5 (9th Cir. Feb. 26, 2026).

Third, OPM's argument that these APA claims are foreclosed because some of the relief Plaintiffs sought could overlap with remedies that the MSPB could at times award to individual employees against employing agencies under the CSRA fares no better. That argument ignores the APA relief against OPM that Plaintiffs actually sought and obtained and is inconsistent with Supreme Court implied preclusion precedent. *Infra* at 49-53.

Neither the Supreme Court nor this Court have ever engaged in the type of implied field or subject-matter-based preclusion that OPM advocates, which focuses only on the effects of the government-wide directive (termination of federal employees) and ignores the type of claim at issue (the APA), the nature of the challenged action (a government-wide directive), and the identity of the agency that took that action (OPM). The Congress that enacted the CSRA and FSLMRS did not intend to preclude all APA claims challenging OPM's government-wide actions solely because those actions resulted in terminations of federal employees.

-4-

The relevant statutory text, faithful application of Supreme Court precedent regarding implied preclusion, and governing precedent of this Court require affirmance of the district court's judgment.

## STATEMENT OF JURISDICTION

As discussed herein, the district court properly exercised jurisdiction over Plaintiffs' APA and *ultra vires* claims pursuant to 28 U.S.C. §1331. Plaintiffs agree with OPM that this Court has appellate jurisdiction under 28 U.S.C. §1291.

## STATEMENT OF THE ISSUES

Whether the CSRA and FSLMRS, which govern disputes between individual employees and their agency employers and between federal employee unions and agency employers with whom they have contracts, impliedly stripped federal courts of jurisdiction to hear APA claims challenging government-wide directives issued by OPM, and whether this Court's published decision on that issue in *AFGE v. Trump* binds this Court.

## STATEMENT OF THE CASE

### I.   Relevant Statutory Authorities

In its filings at all levels, OPM has repeatedly conceded that it "lacks statutory authority to direct other agencies to terminate probationary employees." *OPM v. AFGE*, Case No. 24A904, 145 S.Ct 1914 (Application to Stay, at \*24); *see also* Case No. 25-1677, Dkt. 71.1 (Reply Brief for Appellants, at 2, 18) (same); Case No. 25-1677, Dkt. 61.1 at 34; ER-32; *see also generally* 5 U.S.C. §§1101-1105; *cf.* 5 U.S.C. §1103(a)(1)-(3) (setting forth OPM's authority over its own

employees).  That is correct:  Congress limited OPM's statutory role in relation to other agencies to providing human resources support—a function it performs by publishing government-wide rules in compliance with the APA, 5 U.S.C. §§1103(b), 1105; providing technical assistance, *id*. §§4304, 4305, 7514; and recommending policies, *id*. §1103(a)(7).

Congress granted authority not to OPM, but to the head of each federal agency,[1] to manage that agency's affairs, including authority over employment decisions such as the hiring, promoting, transferring and terminating the agency's employees, consistent with the agency's appropriations, functions, and all statutory obligations.  *See* 5 U.S.C. §3101 (granting "General Authority to Employ" to each agency head).  The various agencies' authorizing statutes similarly delegate exclusive authority over employment decisions to the agencies themselves—specifically, to agency heads.  *See, e.g.*, 38 U.S.C. §§303, 510 (Veterans Affairs); 10 U.S.C. §113 (Defense).

OPM's authorizing statutes were enacted in 1978 as part of the CSRA.  Public Law 95-454, §201 (1978).  The CSRA incorporated the APA, which preceded the CSRA by more than 30 years, in at least three places.  5 U.S.C.

---

[1] Plaintiffs use the term "agency" as generally used by Congress to include both the Cabinet-level departments and other federal agencies created by statute. *E.g.*, 5 U.S.C. §105.  *See also Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., OSHA*, 595 U.S. 109, 117 (2022) ("Administrative agencies are creatures of statute. They accordingly possess only the authority that Congress has provided."); *La. Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 374 (1986) ("[A]n agency literally has no power to act … unless and until Congress confers power upon it.").

§§1103(b)(1), 1105, 7134.  Nowhere in the CSRA did Congress expressly exempt OPM's actions from APA judicial review.  Rather, Congress specifically subjected OPM's actions to the APA's rule-making requirements (except for personnel actions vis-à-vis OPM's own employees) and expressly waived the APA's exclusion of "matter[s] relating to agency management or personnel," 5 U.S.C. §553(a)(2).  *See* 5 U.S.C. §1105 ("[I]n the exercise of the functions assigned under this chapter, the Director shall be subject to subsections (b), (c), and (d) of section 553 of this title, notwithstanding subsection (a) of such section 553.").

In the same legislation that established OPM, Congress also established the Merit Systems Protection Board ("MSPB") and the Federal Labor Relations Authority ("FLRA").  But Congress did not enact provisions sending claims challenging OPM actions that impact federal employees to those agencies.

The MSPB's purpose and function is to hear individual employee "appeals" from specified adverse employment actions taken by their employing agencies.  5 U.S.C. §§7512 (defining "[a]ctions covered"), 7513(d) (describing procedures for appeals of such actions to the MSPB).  OPM *cannot* be named as a defendant in an appeal before the MSPB (other than in an appeal brought by its own employees, in OPM's capacity as their employing agency), or in any action for judicial review of an adverse MSPB decision.  *See* 5 U.S.C. §§7701, 7703.[2]

---

[2] OPM does not dispute that claims challenging the OPM actions at issue cannot be brought against OPM before the MSPB.  Opening Brief at 10, 13-15; *see also* Case No. 25-1677, ECF 44.1 at 3, 14.

The FLRA's purpose and function is to resolve certain labor-management disputes, including unfair labor practice charges brought by employees and their labor representatives against employing agencies and collective bargaining disputes between unions and the agencies with which they have contracts. 5 U.S.C. §§7105(a)(2), 7117, 7118. As with the MSPB, OPM cannot be named as a respondent in any dispute before the FLRA or on judicial review of an adverse FLRA decision. *Id.* §§7118, 7123. Congress expressly excluded challenges to government-wide rules from the FLRA's jurisdiction to resolve collective bargaining disputes. 5 U.S.C. §7117(a)(1) (duty to bargain, and therefore FLRA jurisdiction over bargaining disputes, extends to "matters which are the subject of any rule or regulation only if the rule or regulation *is not a Government-wide rule or regulation*") (emphasis added); *see also NTEU and Dep't of Treasury, IRS*, 60 F.L.R.A. 782, 783 (Mar. 29, 2005) (FLRA lacks jurisdiction to consider challenges to government-wide rules).[3]

## II.    The OPM Mass Termination Orders

In its undisputed factual findings, the district court found that OPM directed the mass termination of probationary employees employed by other agencies and further directed when and how that mass termination was to be carried out. ER-7–12.

---

[3] OPM also does not dispute that OPM cannot be named by a union as a respondent in an unfair labor practice charge or collective bargaining dispute at the FLRA (beyond disputes regarding its actions toward its own employees). Opening Brief at 10, 15-16; *see also* Case No. 25-1677, ECF 44.1 at 4, 15-16.

OPM's mass termination program began with a January 20, 2025 memorandum from Acting Director Ezell directing all "Heads and Acting Heads of Departments and Agencies" to submit to OPM by January 24, 2025 a list of their agencies' "employees on probationary periods…" and to "promptly determine whether those employees should be retained at the agency." 2-SER-416.

Soon thereafter, OPM sent an escalating series of follow-up demands. On February 12, OPM instructed all federal agencies that "Action" was "Due 2/13" for "Probationary Employee[s]." 2-SER-464. In this communication, OPM "clarifie[d] immediate next steps for probationary employees," and directed agencies to "action those you know you wish to separate" by the close of business the next day, February 13. 2-SER-464–465. OPM instructed agency leaders that, "[a]fter actioning," agencies should immediately update the probationary employee lists they submitted to OPM, and required each agency to provide an "explanation of why" it wanted to keep any probationary employees whom it had not yet terminated. 2-SER-465.

Then, on February 14, OPM "clarifie[d] immediate next steps for probationary employees" and "asked" agencies to "separate probationary employees that you have not identified as mission-critical no later than end of the day Monday, 2/17." 2-SER-456–457. Again, agencies were instructed that "[a]fter actioning," they should update the probationary employee lists provided to OPM, and directed to continue providing daily reports to OPM through the end of that week. *Id.*

-9-

Throughout this period, OPM determined, through an "exemptions" process, whether agencies could shield categories of their probationary employees from termination. ER-7–9 (finding that the "[exemption] process evidences OPM's ultimate discretion over the retention and termination of other agencies' probationers."). The only criterion that OPM allowed agencies to apply to keep their probationary employees was whether the employee served in a "critical" function. ER-11; 2-SER-456; *see also* 2-SER-419, 2-SER-467–469.

The district court further found that OPM ordered agencies to use false premises for the terminations by claiming everyone was being fired for performance reasons, regardless of any employee's actual performance. ER-10–12. OPM drafted and provided a required form letter to all agencies that stated that "[t]he Agency finds, *based on your performance*, that you have not demonstrated that your further employment at the Agency would be in the public interest." 2-SER-452–453 (emphasis added); *see also* 2-SER-450, 2-SER-456–459, 2-SER-463. OPM directed agencies that they "*must* identify performance or conduct deficiencies in the notice terminating a probationer." ER-11 (emphasis added). But the form letter did not include a space for any individualized reasons for termination (*id.*), despite OPM's own regulation requiring written notice of the reasons supporting a probationary employee's termination for performance or

-10-

conduct, 5 C.F.R. §315.804.[4]  And OPM instructed agencies to use this form letter even if performance deficiencies had not been "identified in a previous performance evaluation."  2-SER-450.  OPM made clear: "Employees do not need to have received any particular performance rating previously to be separated."  2-SER-465.

In light of this record, the district court specifically rejected Defendants' factual defense that OPM was only providing "guidance" and the agencies were making the relevant decisions.  ER-33–37.

The court found that as the result of OPM's orders, federal agencies "terminated a total of 25,406 probationers in less than a month's time."  ER-12.

## III.    Plaintiffs Challenge OPM's Directives

On February 19, 2025, Plaintiffs filed the original complaint in this action, alleging that OPM's directives to other agencies were *ultra vires* and violated the APA, including because OPM exceeded any statutory authority, and engaged in unlawful arbitrary and capricious actions.  3-SER-695–722.  Plaintiffs included two national unions, AFGE and AFSCME, which between them represent employees of numerous federal agencies, as well as several of their affiliated local unions and a coalition of non-profit organizations.  ER-48–49; 3-SER-556–557.

---

[4] A separate executive order issued later in 2025 purported to revoke this regulation, but §315.804 was in effect at the time of the OPM directive challenged in this case.

As relief for OPM's *ultra vires* actions and APA violations, the original complaint sought a declaration that OPM's directives to other actions to terminate probationary employees were unlawful and injunctive relief setting aside OPM's directives and requiring OPM, and anyone acting in concert, "to cease terminations of probationary employees pursuant to OPM's program and order" and "to rescind the prior unlawful terminations of probationary employees pursuant to OPM's Order." 3-SER-721. The original complaint did not name as defendants any other federal agencies (i.e., the agencies that employed the probationary employees who were the subject of OPM's directives). 3-SER-698–699.

Plaintiffs' Second Amended Complaint, filed March 11, 2025, added the employing federal agencies and the heads of those agencies "solely pursuant to Rule 19(a)(1)(A) for purposes of effectuating complete relief … against Defendants OPM and Ezell." 3-SER-572. That complaint sought the same forms of relief as the original complaint. 3-SER-612 (seeking a declaration "that OPM's new program[] … requiring federal agencies to terminate probationary employees … [is] unlawful" and "injunctive relief setting aside OPM's order as unlawful; requiring OPM and Federal Agency Defendants to cease terminations of probationary employees pursuant to OPM's program and order; and requiring OPM and Federal Agency Defendants to rescind the prior unlawful terminations of probationary employees pursuant to OPM's Order").

On March 13, 2025, the district court issued a preliminary injunction based on its conclusion that OPM was unlawfully directing the terminations of

probationary employees across other agencies without the statutory authority to do so, and required the reinstatement of terminated probationers at six federal agencies. *See* Case No. 25-1677, Dkt. 61.1 at 24. The court granted that injunctive relief to the non-profit organization plaintiffs, not to the union plaintiffs that are presently before this Court. The court explained that the injunctive relief was necessary "[t]o staunch the irreparable harms to [O]rganizational [P]laintiffs caused by OPM unlawfully slashing other agenc[ies'] staff." *Id*. at 24-25.

OPM sought an immediate administrative stay and stay pending of appeal from this Court, which were both denied. *AFGE v. OPM*, Case No. 25-1677, 2025 WL 914823 (9th Cir. Mar. 26, 2025). In denying the stay, this Court concluded that OPM demonstrated "neither that they are sufficiently likely to succeed on the merits of this appeal nor that they w[ould] suffer irreparable harm from complying with the preliminary injunction." *Id*. at *1. The Supreme Court subsequently granted a stay of the injunction on standing grounds, stating that "the allegations of the nine non-profit organizations in this case" were "presently insufficient to support the organizations' standing." *OPM v. AFGE*, 145 S.Ct. 1914 (2025).

In the meantime, the district court issued a further order concluding that it had jurisdiction to hear the other plaintiffs' claims, rejecting Defendants' standing

and administrative channeling arguments.[5]  *See* Case No. 25-1677, Dkt. 61.1 at 26. On April 18, 2025, the court issued a second preliminary injunction, this time to the union plaintiffs.  *Id.* at 26-28.  By that time, the employees at issue had largely been reinstated by their employing agencies, as the result of an injunction issued in other litigation in the District of Maryland.  *Id.* at 27.  The court therefore focused this new injunction on the remaining residual harm that continued to flow from OPM's original unlawful directives.  *Id.*.  This second preliminary injunction ordered that OPM cease requiring agencies to terminate probationary employees and that the relief defendants cease following those directives, cease using OPM's sham termination-based-on-performance letter, and issue letters to their probationary employees correcting OPM's misrepresentations regarding the basis for their initial terminations.  *Id.* at 27-28.  The court concluded that, without these measures, "[t]he stain created by OPM's pretense will follow each employee through their careers and will limit their professional opportunities."  *Id.* at 27.

Defendants' appeals from the two injunctions were consolidated, Case No. 25-1677, Dkt. 39.1, and were pending when the district court resolved the parties'

---

[5] The government incorrectly asserts that the district court did not find that Plaintiff State of Washington has standing.  Opening Brief at 12 n.2.  The district court found that Washington had standing based on the financial injury resulting from increased unemployment benefit claims.  Dist. Ct. Dkt. 202 at 21-22.  But Plaintiffs agree with the government that there is no need for this Court to reach any issues regarding Washington's standing.  *See, e.g.*, *Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 523 (9th Cir. 2009) ("[I]n an injunctive case this court need not address standing for each plaintiff if it concludes that one plaintiff has standing.").

-14-

cross-motions for summary judgment on September 13, 2025.  ER-3–5.  This

Court concluded that the summary judgment decision mooted the appeals.  Case

No. 25-1677, Dkt. 85.1.

## IV.    Summary Judgment on Plaintiffs' APA Claims Against OPM

The district court granted summary judgment to Plaintiffs on their APA

claims against OPM and denied Defendants' cross-motion for judgment.  ER-6,

ER-41–43.  As previously discussed, it did so based on its factual findings,

grounded in the administrative record compiled by OPM, that OPM (and not the

employing agencies) made the decisions and took the actions at issue.  *Supra* at 2.

A.    *The district court's jurisdictional conclusions*

The district court concluded that it had jurisdiction over Plaintiffs'

claims against OPM,[6] reiterating its earlier ruling that had rejected OPM's

implied preclusion arguments, *AFGE v. OPM*, 771 F.Supp.3d 1127 (N.D.

Cal. 2025), and relying on *AFGE v. Trump*, 139 F.4th 1020 (9th Cir. 2025).

ER-23.

---

[6] Before addressing subject matter jurisdiction, the district court found that the Plaintiff unions had both direct and associational standing to bring the claims in this action, rejecting Defendants' arguments to the contrary.  ER-21 ("[U]nion plaintiffs stand in the shoes of their members, some of whom have been injured due to termination under false pretext, and stand on their own, in light of the harm to their operational funding and frustration of their core functions").  OPM has abandoned any challenge to Plaintiffs' standing for purposes of this appeal.  *Tri-Valley CARES v. U.S. Dep't of Energy*, 671 F.3d 1113, 1129-30 (9th Cir. 2012).

-15-

The court concluded that this Court's jurisdictional holding in *AFGE v. Trump* was controlling, because it involved the same type of government-wide OPM actions and rejected the same implied preclusion arguments by the federal government. ER-23–26. Like this case, *AFGE v. Trump* "concerned whether OPM and others had exceeded statutory bounds when ordering agencies to terminate their (non-probationary) employees *en masse*." ER-23. The court rejected the Defendants' argument that *AFGE v. Trump* was distinguishable because it "was centered on an order for agencies to terminate their employees, not on the terminations themselves." ER-24. As the district court explained, "*So is this one*." *Id.* (emphasis added).[7] The district court noted as support *AFGE v. Trump*'s observation that these cases (meaning this case and *AFGE v. Trump*) are "very similar." *Id.* The district court further noted OPM's concession that some of Plaintiffs' claims for relief fell outside the jurisdiction of the administrative agencies it invoked, and concluded that the Ninth Circuit had already rejected the argument that Congress intended to foreclose those claims. *Id.*

The district court also rejected OPM's argument that the Supreme Court's emergency-docket stay order in *AFGE v. Trump* implicitly undermined the district

---

[7] The court conclusively rejected Defendants' attempt to characterize *this* case as somehow involving only individual employment actions (as opposed to OPM's government-wide directives), noting that OPM itself had focused its arguments on factually disputing the "central claim" that it directed agencies to take government-wide action, and never attempted to address or defend any individual employment decisions, "none of which is directly at issue here." *Id.*

court's finding of subject matter jurisdiction in that case. As the district court explained, the Supreme Court premised its stay order in *AFGE v. Trump* on its initial view of the merits and declined the federal government defendants' invitation to address their threshold jurisdictional challenge. ER-25 (quoting order as granting stay "'[b]ecause the Government is likely to succeed on its argument *that the Executive Order and Memorandum are lawful—and because the other factors bearing on whether to grant a stay are satisfied.*'") (quoting *AFGE v. Trump*, 145 S. Ct. 2635 (2025)) (emphasis added by district court). Thus, the district court concluded that nothing in the *AFGE v. Trump* emergency stay order foreclosed its exercise of jurisdiction in this case. ER-25.

The district court expressly incorporated its prior jurisdictional analysis concluding that the *Thunder Basin* factors cut in favor of jurisdiction. ER-26. (citing *AFGE v. OPM*, 771 F.Supp.3d at 1137); *see* 2-SER-484–494. That earlier decision had thoroughly analyzed the issue, even before the Supreme Court's stay decision in *AFGE v. Trump* indicated that claims like these should survive:

First, the district court concluded that the "public-sector unions' claims 'raise only a standard issue of administrative and constitutional law'" such that neither the MSPB nor the FLRA had any relevant special expertise. 2-SER-486–487(citing *Axon Enterprise, Inc. v. Federal Trade Commission*, 598 U.S. 175, 188 (2023)) (cleaned up). Next, Plaintiffs' claims were "collateral to the types of claims brought before the MSPB or the FLRA," because they did not challenge individual termination decisions by the agencies, but rather "a prior controlling

-17-

event," OPM's directive to other agencies. 2-SER-487–488. Finally, the district court concluded that Plaintiffs' claims against OPM would evade meaningful review if they were channeled to the MSPB or FLRA, where these claims cannot be heard. 2-SER-489. Thus, the court concluded that all factors weighed against implied preclusion of the union plaintiffs' claims.[8]

B.    *The district court holds that OPM violated the APA*

Having found jurisdiction over Plaintiffs' claims against OPM, the district court ruled that OPM's directives exceeded its authority or were contrary to law, and were arbitrary and capricious, in violation of the APA. ER-30–41.[9]

The court concluded that OPM's directives were final agency action for purposes of the APA (rejecting another argument that OPM has now abandoned). ER-30–31. Those final actions exceeded OPM's statutory authority because, as OPM conceded, no statute authorized OPM to direct other agencies to terminate their employees; instead, Congress gave that type of authority to the agencies themselves. ER-31–32. As a result, "OPM subverted Congress's statutory scheme when it directed other agencies to terminate their probationers 'with the exception

---

[8] The district court's summary judgment order also included at the end of its jurisdictional analysis some general observations regarding impairments to MSPB and FLRA operations that existed at the time. ER-26–29.

[9] The district court declined to reach the *ultra vires* claim because Plaintiffs conceded that, for purposes of the pending motions, the analysis, record, and relief sought overlapped entirely with their APA claims. ER-41.

of high-performing employees in mission critical roles.'"  ER-32 (citation omitted); *see also* ER-31–33.

The district court also held that OPM's actions were arbitrary and capricious and therefore unlawful.  Specifically, OPM "directed the termination of over 25,000 probationers across the federal government 'based on [their] performance' pursuant to [5 C.F.R. §§315.803 and 315.804] without *any* consideration of actual performance or conduct, or any 'rational connection between the facts found and the choice made.'"  ER-40 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)) (emphasis in original).  Indeed, the court concluded that "[t]he record [compiled by OPM] does not contain a single mention of any performance deficiency on the part of any probationer terminated pursuant to OPM's directive."  ER-41.  Further, when OPM ruled on exemptions requested by other agencies, it gave no explanation for its determinations.  *Id.*

C.    *The district court grants final APA relief*

The court granted several final APA remedies.  First, it held OPM's actions unlawful, entering the requested declaratory judgment "that OPM lacked the authority to direct other agencies to terminate their probationary employees and violated the APA when it did so," and that "[t]erminations pursuant to that directive violated the APA."  ER-42.  Next, it set those unlawful OPM actions aside, permanently enjoining "OPM, its director, its Special Advisors, and all other OPM employees … from ordering, directing, or telling any other federal agency to terminate the employment of any federal employee or group of federal

-19-

employees." *Id.* Likewise, the Rule 19 federal agency defendants were permanently enjoined "from following any OPM order or direction to fire any agency employee," and "from any further use of the OPM template termination letter provided by OPM—including any altered or modified versions." *Id.*[10]

The court then issued further orders as necessary to remedy the remaining harms to the probationary employees who were on the receiving end of OPM's actions. ER-42–43. While most agencies had corrected the personnel records that had been shaped by OPM's directives, some had not. The court therefore required certain federal agency defendants to correct personnel files to reflect that the affected probationary employees had not been fired for performance reasons and to issue those employees corrective notices to that effect, and prohibited those agencies from representing to third parties that affected employees had been fired for performance reasons. *Id.*

In November 2025, the federal agency defendants filed declarations confirming their compliance with the district court's final injunctive orders. 1-SER-2–78.

## STANDARD OF REVIEW

Although this Court reviews questions of subject matter jurisdiction de novo, *see Lake v. Ohana Mil. Communities, LLC*, 14 F.4th 993, 1000 (9th Cir. 2021), any

---

[10] The only exception concerned "suitability" determinations under 5 C.F.R. §5.3, which the district court carved out of the remedy. ER-32. Section 5.3 authorizes OPM to direct other federal agencies to terminate employees under certain circumstances not present in this case.

findings of fact made by the district court in the course of determining its subject matter jurisdiction are reviewed only for clear error. *Wilkins v. United States*, 13 F.4th 791, 793 (9th Cir. 2021); *see also L.J. by & through Hudson v. Pittsburg Unified Sch. Dist.*, 850 F.3d 996, 1002 (9th Cir. 2017) (noting that clear error standard applies even when factual findings are based on an administrative record).

## ARGUMENT

As this Court has previously held, nothing in the text, structure, or purpose of the CSRA or FSLMRS supports the conclusion that Congress impliedly intended for APA claims challenging OPM's government-wide actions to be heard by either the MSPB or the FLRA. *AFGE v. Trump*, 139 F.4th at 1030-33. *AFGE v. Trump* addressed the same type of APA claims against OPM, brought by these same federal employee unions, challenging other OPM government-wide actions that also directly resulted in the terminations of federal employees. That precedent controls, and OPM's attempts to distinguish this Court's holding were correctly rejected by the district court.

Moreover, this Court was correct in deciding that APA claims challenging OPM's government-wide directives are not impliedly precluded by the CSRA, and in rejecting the argument that Supreme Court precedent requires a different result. Beginning, as the Court must, with the text of the statutes at issue, the same Congress that simultaneously established the MSPB, the FLRA, *and* OPM also expressly subjected OPM's government-wide employment-related actions to the strictures of the APA. And, that same Congress *chose not to* make those OPM

-21-

actions subject to the jurisdiction of the MPSB or FLRA. That Congress cannot plausibly be understood as having simultaneously and silently intended to foreclose APA claims challenging government-wide actions by OPM. For reasons further discussed below, the claims at issue in this case are outside the remit that Congress gave those administrative agencies and are not the "type" that are channeled.

Finally, even if overlapping remedies were hypothetically available for individual employees through the administrative avenues created by the CSRA, that alone could not meet the "heavy burden" required to overcome the "'strong presumption' favoring judicial review of administrative action." *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486 (2015) (quoting *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670 (1986)).

Because OPM has abandoned all other arguments, and the district court correctly decided the only issue raised in this appeal, the judgment should be affirmed.[11]

## I.    *AFGE v. Trump*'s Jurisdictional Analysis Binds This Court

Both *AFGE v. Trump* and this case raise the same legal issue: whether Congress intended for the CSRA to foreclose judicial review of APA claims

---

[11] By limiting its appeal to the question of implied preclusion of jurisdiction, OPM has waived any other issues previously raised below (including factual defenses, the merits, standing, and the availability of equitable relief). *See, e.g.*, *Tri-Valley CARES*, 671 F.3d at 1129-30 (party waives any issue not argued in its opening brief on appeal).

brought by federal employee unions challenging unlawful, government-wide action by OPM, when OPM's actions affect the employment status of individual federal employees. This Court squarely decided that issue in *AFGE v. Trump*, and OPM's arguments to avoid that binding decision lack merit.

In *AFGE v. Trump*, the plaintiff federal employee unions brought APA and ultra vires challenges to the federal government-wide effort to "transform[] the Federal bureaucracy" by directing agencies to engage in large-scale reductions-in-force ("RIFs"), thereby reorganizing and downsizing agencies. 139 F.4th at 1028. There, as here, OPM (among others) was accused of directing other federal agencies as to whether, how many, when, and how to terminate their own employees. *Id*. at 1028. After Plaintiffs sued—asserting that OPM had violated the APA because its actions were contrary to law, in excess of its statutory authority, and arbitrary and capricious—OPM argued, as it does here, that "Plaintiffs' claims must be channeled through the administrative system established" by the CSRA and FSLMRS, because Plaintiffs' claims involved "personnel action[s]" that Congress intended to be heard in the first instance by the MSPB and FLRA. *Id.* at 1030.

This Court rejected that argument, holding that Congress did not impliedly send the plaintiffs' APA or ultra vires claims to any administrative agency and thereby preclude federal jurisdiction. *Id*. at 1030-33. As this Court observed, when an agency defendant attempts to overcome an express grant of federal jurisdiction by arguing that Congress implicitly precluded judicial review by

-23-

creating a "comprehensive" administrative agency adjudicatory process, courts apply a three-factor test set forth in *Thunder Basin* for determining "if the Plaintiffs' claims 'are of the type Congress intended to be reviewed within th[e] statutory structure.'" *Id.* at 1030 (quoting *Axon*, 598 U.S. at 185-86). Applying that test, this Court held that the APA claims challenging OPM's government-wide directives were not channeled because they were not the "type of…claim[]" that Congress created those agencies to address; they challenged a different type of agency action (a government-wide directive) taken by a different type of defendant (OPM, not the employing agency) than the CSRA administrative procedures were designed to adjudicate. *Id*. at 1030-33.

There is no meaningful way to distinguish the types of claims raised against OPM in these two cases for the purpose of this jurisdictional analysis. In *AFGE v. Trump*, plaintiffs challenged an OPM Memorandum mandating large-scale RIFs to be imposed by employing agencies, upon OPM approval (including approval of any "exceptions"), on timelines set by OPM. Here, Plaintiffs challenged OPM actions mandating large-scale terminations to be imposed by federal agencies, subject to OPM's approval of any "exceptions," on deadlines set by OPM. Both challenged actions are government-wide directives requiring employing agencies to take employment actions. Hence, this Court specifically observed that *AFGE v. Trump* is "very similar" to this case, when noting with approval the district court's jurisdictional order in in this case "reject[ing] the government's channeling

-24-

argument." *Id.* at 1031 (citing *AFGE v. OPM*, 771 F.Supp.3d 1127 (N.D. Cal. 2025)).

OPM attempts to create distance between the cases by claiming that *AFGE v. Trump* involved only the legality of *plans* (i.e., orders "that directed federal agencies to *prepare to initiate* reductions in force and sought relief to have those documents set aside and prevent agencies from implementing the order *to prepare for* reductions in force," Opening Brief at 19 (emphasis added)), while characterizing this case as challenging actual individual terminations. *Id.* But *AFGE v. Trump* involved far more than plans: there, as this Court specifically acknowledged, government-wide actors made decisions and issued directives that had already resulted in actual terminations. 139 F.4th at 1028.[12] Indeed, when OPM asked this Court to stay the injunction in *AFGE v. Trump*, it expressly argued that the claims in that case were channeled because the plaintiffs there were challenging "agencies' employment decisions" and plaintiffs were "agglomerating many individual employment actions into one shotgun complaint." Case No. 25-

---

[12] By the time that case was filed and the plaintiffs sought injunctive relief, federal agencies had already taken thousands of concrete employment actions implementing the government-wide directives, including by issuing RIFs, placing staff on administrative leave, and other actions. *Id.* at 1028 (noting employment actions including: Americorps had noticed the termination of 85 percent of its staff; the General Services Administration "already made significant cuts, leaving no employees to maintain fire protection systems, manage indoor air quality, or supervise asbestos inspections in government buildings"; and "the Department of Health and Human Services has cut 93% of its National Institute for Occupational Safety and Health staff").

3034, Dkt. 4.1 at 11-12; *see also AFGE v. Trump*, 139 F.4th at 1031. In other words, OPM made the same argument in *AFGE v. Trump* that it makes here, and this Court rejected it. 139 F.4th at 1031.

OPM is also incorrect in describing this case as involving *only* individual employee termination decisions, and not the constitutional and statutory authority of OPM to issue these government-wide directives. The district court found that the actions at issue here are OPM's government-wide directives, and OPM has waived any challenge to those findings.[13] And the district court correctly recognized that both cases "are about whether one actor exceeded its authority when it directed *all* federal agencies to terminate" their employees *en masse*, not about "one agency's decision to terminate one employee or *its own* workforce." ER-24 (cleaned up; emphasis in original). The final agency action here at issue is OPM's decision to issue a government-wide directive requiring all federal agencies to terminate their probationary employees, so no meaningful distinction can be drawn between the type of claim at issue here and that addressed in *AFGE v. Trump*.

---

[13] In the district court, OPM's principal defense on summary judgment was to insist that its directives to other agencies were mere "guidance," not orders, and that the employing agencies took the actions in question. ER-33–37. But while OPM's briefing to this Court improperly repeats this characterization, *see, e.g.*, Opening Brief at 11, OPM has waived any challenge to the district court's factual finding that it ordered the mass termination of probationary employees of other agencies. *See Crime Justice & Am., Inc. v. Honea*, 876 F.3d 966, 978 (9th Cir. 2017) ("Issues raised in a brief which are not supported by argument are deemed abandoned."); *supra* n.10.

OPM's additional arguments as to why *AFGE v. Trump* is not binding in this case also fail. Opening Brief at 18-19. As a general rule, "a published decision of this court constitutes binding authority 'which must be followed unless and until overruled by a body competent to do so.'" *In re Zermeno-Gomez*, 868 F.3d 1048, 1052 (9th Cir. 2017) (cleaned up) (quoting *Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc)). That is true even in the context of a stay decision, when the decision resolves a legal issue. *East Bay Sanctuary*, 993 F.3d at 660. *East Bay Sanctuary* recognized a limited exception to this general rule, holding that a stay decision may not be binding on future panels in the same case, because "[f]urther development of the record as the case progresses may alter [the court's preliminary] conclusions." *Id.* at 660-62. But *East Bay Sanctuary* explicitly maintained the general rule that resolution of legal issues is "binding as precedent for other panels deciding the same issue" in other cases. *Id*. at 660. *AFGE v. Trump* plainly resolved an issue of law with respect to jurisdiction that is binding under *East Bay Sanctuary*.

As such, it is neither here nor there that OPM believes *AFGE v. Trump* was wrongly decided. Opening Brief at 19. Nor does it help OPM to repeat that stay decisions are merely "predictive" or "probabilistic," Opening Brief at 17, or that they are issued at a "very preliminary stage of the proceedings," Case No. 25-1677, Dkt. 71.1 at 16. This Court was aware of the stay context in *East Bay Sanctuary*

-27-

when it confirmed that resolutions of legal issues, like the jurisdiction question here, are precedential.[14]

To the extent OPM argues that *AFGE v. Trump* should not be followed because the Supreme Court granted OPM's stay request in that case, that too is wrong. Nothing about the Supreme Court's emergency stay order, which did not address jurisdiction, reversed or even cast doubt on this Court's implied preclusion analysis. *Trump v. AFGE*, 145 S. Ct. 2635 (2025). The Supreme Court did not accept the federal government's invitation to rule on channeling (which was one of the government's primary arguments), but commented only on the likelihood of merits success on certain claims. *Id*. at 2635 ("Because the Government is likely to succeed on its argument that the Executive Order and Memorandum are lawful—and because the other factors bearing on whether to grant a stay are satisfied—we grant the application."). The Supreme Court then explained that it was *not* reaching issues raised by the plaintiffs' additional claims in the case, thus leaving the case to proceed below. *Id*.; *see also id.* at 2635 (Sotomayor, J., concurring in "the Court's stay because it leaves the District Court free to consider those [merits] questions in the first instance."). Thus, the Supreme Court did not

---

[14] Given that OPM has waived any challenge to the district court's factual findings on appeal, it could not (and has not attempted to) identify any factual contingency or "development of the record" that would render *AFGE v. Trump*'s jurisdictional analysis any less applicable this case. *East Bay Sanctuary*, 993 F.3d at 662.

undermine this Court's jurisdictional decision; if anything, it signaled that it may agree with allowing these cases to proceed in federal court.[15]

In short, this Court's jurisdictional analysis in *AFGE v. Trump* is not "clearly irreconcilable" with anything in the Supreme Court's order on appeal, and as a result it remains binding precedent in this Circuit. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). This Court should apply that precedent to again reject OPM's arguments for keeping this case out of court.[16]

---

[15] The First Circuit agrees. *See New York v. Kennedy*, 155 F.4th 67, 75 (1st Cir. 2025) ("[E]ven though the government raised the same CSRA argument in *AFGE* that it asserts here, the Court's determination that the government was likely to succeed in establishing that the Executive Order was lawful, *a necessarily merits-based ruling*, indicates that the Supreme Court concluded that the district court likely had jurisdiction to make that decision.") (emphasis added); *see also Rhode Island v. Trump*, 2025 WL 3251113, at *7 (D.R.I. Nov. 21, 2025) ("The Supreme Court has already likely indicated that Defendant's CSRA argument fails") (citing *AFGE v. Trump*, 145 S. Ct. 2635).

[16] *AFGE v. Trump* was not the first time that this Court and the Supreme Court declined to embrace OPM's sweeping channeling argument. After the first preliminary injunction in this case, this Court denied OPM's stay application on the ground that OPM was not "likely to establish that Congress has channeled the organizational plaintiffs' claims to administrative agencies." *AFGE v. OPM*, No. 25-1677, 2025 WL 914823, at *1 (9th Cir. Mar. 26, 2025). The Supreme Court then stayed that injunction, solely on the ground that the record then before it was insufficient to establish standing for the nonprofit organization plaintiffs. *OPM v. AFGE*, 145 S.Ct. 1914 (2025). In other cases last term as well, the government presented the same or similar arguments as to the effect of a "comprehensive review scheme" on federal jurisdiction, and the Supreme Court did not address such issues in those cases either. *McMahon v. New York*, 145 S.Ct. 2643 (2025); *Department of State v. AIDS Vaccine Advocacy Coalition*, 145 S.Ct. 753 (2025).

## II. This Court Correctly Concluded that Congress Did Not Channel APA Claims Against OPM's Government-Wide Directives

When an agency defendant argues that that Congress impliedly prohibited district court review of an administrative action by enacting a "comprehensive" administrative adjudicatory system, courts apply the *Thunder Basin*'s three-factor test for determining "whether the particular claims brought were 'of the type Congress intended to be reviewed within th[e] statutory structure.'" *Axon*, 598 U.S. at 185-86 (quoting *Thunder Basin*, 510 U.S. at 208, 212); *see also id*. at 186 ("The ultimate question is how best to understand what Congress has done—whether the statutory review scheme, though exclusive where it applies, reaches the claim in question."). As with all questions of statutory interpretation, that project begins with the plain text of the statutes at issue. *Amazon.com Servs., LLC v. Teamsters Amazon Nat'l Negotiating Committee*, 163 F.4th 624, 635 (9th Cir. 2025); *see also AFGE v. Trump*, Case No. 25-4014, 2026 WL 534591 at *5 (9th Cir. Feb. 26, 2026). Here, those statutes are the 1978 CSRA and the 1946 APA. In reconciling those statutes, this Court is guided, as it was in *AFGE v. Trump*, by years of Supreme Court APA jurisprudence establishing a strong presumption favoring the APA's command of judicial review. 139 F.4th at 1032.

### A. Courts presume that Congress intended for the actions of administrative agencies to be judicially reviewable.

The Court should "begin," as the Supreme Court has instructed, "with the strong presumption that Congress intends judicial review of administrative action." *Bowen*, 476 U.S. at 670; *accord Axon*, 598 U.S. at 186 ("Congress rarely allows

claims about agency action to escape effective judicial review."); *see also McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, 606 U.S. 146, 155-56 (2025) ("[U]nless there is persuasive reason to believe that Congress intended to preclude judicial review, this Court will not preclude review.") (cleaned up). Indeed, "[f]rom the beginning," the Supreme Court has carefully guarded Article III review of governmental action, and its "cases [have established] that judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." *Bowen*, 476 U.S. at 670 (*quoting Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967)).

This presumption furthers the APA's "command" of judicial review of allegedly unlawful government action. *Dep't of Commerce v. New York*, 588 U.S. 752, 772 (2019). As Justice Kavanaugh recently wrote for the Court, "ambiguity does not suffice" when it comes to implied preclusion of APA claims. *McLaughlin*, 606 U.S. at 162. The Court has held time and again that the availability of some other possible, overlapping avenue for review is not a sufficient basis to conclude that APA claims have been impliedly precluded. *Sackett v. EPA*, 566 U.S. 120, 129 (2012) ("[I]f the express provision of judicial review in one section of a long and complicated statute were alone enough to overcome the APA's presumption of reviewability for all final agency action, it would not be much of a presumption at all."); *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 601-02 (2016); *see also Nat'l Institutes of Health v. Am. Pub. Health Ass'n*, 606 U.S. __, 145 S.Ct.

-31-

2658, 2661 (Barrett, J., concurring) (district court could exercise jurisdiction over APA challenge to agency guidance even if related remedy claims were channeled to Court of Federal Claims); *id.* at 2662-63 (Roberts, C.J., concurring in part and dissenting in part) (district court properly exercised jurisdiction over APA challenge to agency guidance); *see also AFGE v. Trump*, 139 F.4th at 1032 ("We would first note that the APA's presumption of judicial review is not overcome merely because Defendants can point to a theoretical alternative path for an aggrieved party to seek review."). And as the Court also explained, it has "*never*" endorsed implied preclusion of APA claims predicated on "some general similarity of subject matter" in a later-enacted statute. *See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 222–24 (2012) (emphasis added).[17]

---

[17] The Congress that enacted the APA emphasized that the bar for avoiding judicial review of agency action was high:

> Very rarely do statutes withhold judicial review. It has never been the policy of Congress to prevent the administration of its own statutes from being judicially confined to the scope of authority granted or to the objectives specified. Its policy could not be otherwise, for in such a case statutes would in effect be blank checks drawn to the credit of some administrative officer or board.

S. Rep. No. 752, 79th Cong., 1st Sess., p.212 (1945); *accord* H.R. Rep. No. 1980, 79th Cong., 2d Sess., p.275 (1946) ("The statutes of Congress are not merely advisory when they relate to administrative agencies, any more than in other cases. To preclude judicial review under [the APA,] a statute, if not specific in withholding such review, must upon its face give clear and convincing evidence of

By declining to expand implied preclusion doctrine to encompass APA claims, this Court also avoids triggering concerns that implied doctrines facilitate judicial departures from congressional intent expressed in statutory text. *See, e.g.*, *McLaughlin*, 606 U.S. at 157 ("When Congress wants to preclude judicial review … it can easily say so."); *Axon*, 598 U.S. at 207-08, 217 (Gorsuch, J., concurring) ("Divesting jurisdiction by mere implication goes from out-of-bounds to the name of the game. Along the way, this Court arrogates to itself a power to control the jurisdiction of lower federal courts that the Constitution reserves to Congress…"). Federal courts once readily departed from statutory text—fashioning "implie[d]" doctrines as they deemed "necessary to make effective the congressional purpose" expressed in that text, *J.I. Case Co. v. Borak*, 377 U.S. 426, 433 (1964)—but today, Congress's intentions and expectations "matter[] only to the extent [they] clarif[y] text," *Alexander v. Sandoval*, 532 U.S. 275, 288 (2001).

Thus, as the Supreme Court explained in *Axon Enterprises*, each of the three *Thunder Basin* factors serve to protect, rather than to defy, the strong presumption favoring judicial review:

> The first *Thunder Basin* factor recognizes that Congress rarely allows claims about agency action to escape effective judicial review… The second and third reflect in related ways the point of special review provisions—to give the agency a heightened role in the matters it customarily handles, and can apply distinctive knowledge to.

---

an intent to withhold it. The mere failure to provide specially by statute for judicial review is certainly no evidence of intent to withhold review.").

598 U.S. at 186 (citing *Bowen*, 476 U.S. at 670).

**B. The *Thunder Basin* factors support the district court's exercise of jurisdiction.**

This Court's analysis of these factors in *AFGE v. Trump*, which is consistent with Supreme Court precedent, confirms that all three factors weigh in favor of federal court jurisdiction here.

1.   Channeling APA claims would preclude meaningful judicial review

This Court's conclusion in *AFGE v. Trump* that "channeling Plaintiffs' claims against OPM and the other government-wide actors would preclude meaningful judicial review" applies equally here for several reasons. *Id.* at 1032.

First, there is no mechanism to challenge *OPM*'s government-wide actions before either the MSPB or the FLRA, and correspondingly, no avenue for resolution by any reviewing court either. *Supra* at 7-8; *cf. Axon*, 598 U.S. at 190; *AFGE v. Trump*, Case No. 25-4014, 2026 WL 534591 at *5 (9th Cir. Feb. 26, 2026). Take the MSPB: the CSRA makes clear that OPM cannot be sued as a defendant in an appeal before the MSPB, except by OPM's own employees challenging OPM's individual personnel actions as their agency employer. *See* 5 U.S.C. §7701 (authorizing MSPB appeals by employees against agency employers arising from personnel actions as defined in §7512); *id.* §7703 (providing an avenue for judicial review of an MSPB decision only against the specific employing agency "responsible for taking the [underlying] personnel action"). As previously discussed, OPM does not attempt to argue otherwise. *Supra* n.2.

-34-

With respect to the FLRA, OPM again ignores the limits on FLRA jurisdiction and the fact that Congress did not bring OPM's government-wide actions within it. OPM argues that "the FSLMRS provides several mechanisms for unions to challenge management actions," "at least two" of which "are available here." Opening Brief at 15-16 (citing 5 U.S.C. §§7116(a)(1), (5), (8), which permit the filing of unfair labor practice charges against agency employers, and 5 U.S.C. §7105(a)(2), which grants the FLRA broad discretion to award relief *in matters within its jurisdiction*). But the FSLMRS scheme covers unfair labor practice disputes with employing agencies and bargaining and contractual disputes between an employing agency that is signatory to a collective bargaining agreement and a union representing employees subject to that agreement, and does not contemplate or permit adjudication of other types of disputes challenging actions taken by anyone other than the employing agency, like those taken by OPM. *See* 5 U.S.C. §§7103(a)(1), 7118, 7123. Meaningful review against OPM is not available.[18]

Second, no provision of the CSRA contemplates or permits meaningful review by the MSPB or FLRA of final agency actions under the APA. The final

---

[18] OPM's arguments must be also considered against the context of the administration's withdrawal of collective bargaining rights and repudiation of union contracts across a large swath of the federal government. *See AFGE v. Trump*, Case No. 25-4014, 2026 WL 534591 at *5 (9th Cir. Feb. 26, 2026). The FLRA has no jurisdiction to hear disputes raised by parties excluded from the statutory scheme, and OPM's channeling arguments involving the FLRA with respect to the bargaining units for which the President has invoked 5 U.S.C. §7103(b)(1) lack merit on this ground as well. *Id.*

agency actions challenged here—OPM's government-wide directives—are neither covered personnel actions heard by the MSPB nor cognizable as unfair labor practices or the type of collective bargaining agreement disputes heard by the FLRA. OPM does not even attempt to argue that APA claims challenging government-wide orders applicable to all federal agencies could be heard by the MSPB. As this Court explained in *AFGE v. Trump*, in indistinguishable circumstances, "Plaintiffs are not challenging those employment decisions with respect to individual employees. Rather, they are challenging Defendants' constitutional and statutory authority to direct the federal agencies to take such actions in the first place." 139 F.4th at 1031. Nor can the FLRA hear these APA claims, including because its jurisdiction extends to "matters which are the subject of any rule or regulation only if the rule or regulation is *not* a Government-wide rule or regulation." 5 U.S.C. §7117(a)(1) (emphasis added); *see also NTEU*, 60 F.L.R.A. at 783 (confirming that the FLRA lacks jurisdiction to consider challenges to government-wide rules).

Third, that "some federal employees might be able to challenge their terminations in individual proceedings … would not 'obviate the need to address their … statutory [APA] claims—which, again, allege injury not from this or that employment action but from subjection to unlawful executive authority" in the form of government-wide action by OPM, among others. *AFGE v. Trump*, 139 F.4th at 1032 (citing *Axon*, 598 U.S. at 195) (cleaned up). As OPM suggests, some individual probationary employees might have endeavored to challenge their own

terminations in individual MSPB proceedings (although under the regulations then in effect, probationers were almost entirely barred from appealing adverse employment actions). Opening Brief at 14 & n.3. But those scattered proceedings could not "'obviate the need' to address their...statutory [APA] claims" challenging government-wide, indisputably unlawful agency action by the agency responsible for these directives, OPM, which cannot meaningfully be heard by either the MSPB or the FLRA. *AFGE v. Trump*, 139 F.4th at 1032.[19]

This Court's treatment of the meaningful judicial review factor follows from the Supreme Court's analysis in *Axon*, for two important reasons.

First, *Axon* recognizes that the "meaningful review" factor favors jurisdiction when a statutory scheme does not permit or contemplate claims against the particular defendant that is responsible for the plaintiff's injury. 598 U.S. at 190. *Axon* distinguished *Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012), with respect to this point. *Id.* In *Elgin*, a federal employee plaintiff claimed that his termination was unlawful because the agency that terminated him did so pursuant to an unconstitutional statute. 567 U.S. at 7. The only proper defendant against whom Elgin could have brought a claim was the agency that terminated him—and

---

[19] OPM continues to rely on the same out-of-circuit authorities already rejected by this Court in *AFGE v. Trump*. 139 F.4th at 1031; Opening Brief at 15-17; Case No. 25-1677, Dkt. 51-1 at 5, 24-25. In particular, the statutory claims at issue in *AFGE v. Sec'y of Air Force*, 716 F.3d 633, 637-38 (D.C. Cir. 2013), were asserted directly against the employing agency; they did not involve APA claims *against OPM*, which are plainly permitted by the express language of the APA and cannot be reviewed administratively. *Supra* at 5-8.

-37-

claims against *that agency* could meaningfully be adjudicated within the CSRA scheme. *Axon*, 598 U.S. at 190; *Elgin*, 567 U.S. at 21. *Axon* contrasted Elgin's situation with that of the plaintiff in *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010), whose claims against the Public Company Accounting Oversight Board could not be resolved within the relevant scheme, which "provides only for judicial review of [*Securities and Exchange*] *Commission* action." *Axon*, 598 U.S. at 190 (quoting *Free Enterprise Fund*, 561 U.S. at 490) (emphasis in original). "That meant the [plaintiff], absent district court jurisdiction, might never have had judicial recourse." *Id.* In this respect, the claims here at issue resemble those in *Free Enterprise Fund* far more than those in *Elgin*: the CSRA "provides only for judicial review" of claims against the agency employer, and "absent district court jurisdiction," Plaintiffs here would not have "judicial recourse" for their claims *against OPM. Id.*

Second, *Axon* instructs courts to look to "the interaction between the alleged injury and the timing of review" in evaluating whether a claim is "of the type" that a congressionally enacted review scheme was intended to channel. *Id.* at 188, 191, 194. *Axon* thus recognized that after-the-fact appellate review of agency adjudication does not meaningfully address "here-and-now" injuries. *Id.* The Supreme Court has long recognized that APA injuries caused by final agency action are similarly immediate, and are not adequately addressed by after-the-fact appellate review. *See Sackett,* 566 U.S. at 129 (holding that the APA provides for judicial review of "all agency actions," even those that have not yet been

implemented); *Hawkes Co.*, 578 U.S. at 601-02 (holding that "parties need not await [implementation] before challenging final agency action").  The APA makes "final agency action" reviewable, 5 U.S.C. §704, and any agency action becomes "final" upon the "'consummation' of the agency's decisionmaking process," and not only after every action implementing the policy-level decision has been taken. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997); *see also San Francisco Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 579 (9th Cir. 2019) ("[W]hen there was already final agency action, [plaintiffs] were not required to engineer a *further* final agency action in a different form in order to bring suit.") (emphasis in original). Here, the relevant "decisionmaking process" was "consummat[ed]," and therefore became reviewable, when OPM issued its mass-termination directive—that is, even *before* any relief defendant complied with that directive.  *Bennett*, 520 U.S. at 177-78.[20]

2.  <u>APA claims challenging OPM's actions are wholly collateral.</u>

As in *AFGE v. Trump*, the APA challenges to OPM's "constitutional and statutory authority to direct [other] agencies" to terminate employees are also

---

[20] Again, the Supreme Court distinguished *Elgin*, where a complete remedy for the challenged action (an employment decision by the employing agency) could be obtained either at the administrative level or in post-agency appellate proceedings against the employing agency.  *Axon*, 598 U.S. at 190.  *Axon* made clear it is the "nature of the claims and accompanying harms that the parties are asserting" that determines whether the possibility of later judicial review is meaningful, *id.*, and *Elgin* does not address "the nature of the claims" at issue here against OPM under the APA.

-39-

"wholly collateral" to the CSRA's review provisions. 139 F.4th at 1031 (holding that the *Thunder Basin*'s "collateral" factor supports district court jurisdiction over challenges to OPM's "constitutional and statutory authority to direct [other] agencies" to terminate employees). As explained in *Axon*, this factor is concerned with the extent to which the claims at issue, and the procedural and substantive issues actually assigned by Congress to these agencies, overlap. 598 U.S. at 193 (holding that "the collateralism factor favor[ed]" plaintiffs in part because plaintiffs' claims did not "address the sorts of procedural or evidentiary matters an agency often resolves on its way to a merits decision").

There is no mechanism by which either the procedural or the substantive issues raised by Plaintiffs' APA claims could ever be resolved by the MSPB or FLRA in the course of resolving the types of disputes that Congress assigned to those agencies. For example, neither the MSPB nor the FLRA reviews questions of final agency action, or reviews disputes after compiling an administrative record, both of which are fundamental to resolving APA claims. 5 U.S.C. §706.[21] The substantive questions regarding whether OPM's actions exceed its statutory power, or are arbitrary and capricious, likewise do not overlap at all with the issues resolved by the MSPB or FLRA in reviewing an agency's individual employment

---

[21] Congress intended that APA claims would be adjudicated by a district court on review of the "whole record" that pertains to the challenged final agency action or rulemaking (which would never exist in these administrative proceedings, or the subsequent limited appellate review of MSPB or FLRA orders). 5 U.S.C. §706; *see New York*, 588 U.S. at 780.

actions, unfair labor practices, or contract disputes. This Court's conclusion in *AFGE v. Trump* that the question whether OPM has "constitutional and statutory authority to direct [other] federal agencies to take such actions in the first place" falls completely "outside the scope of" the administrative claims is directly on point. *AFGE v. Trump*, 139 F.4th at 1030-31; *see also Free Enterprise Fund*, 561 U.S. at 490 (general challenge to structure of adjudicative agency "is 'collateral' to any Commission orders or rules from which review might be sought."); *Axon*, 598 U.S. at 193 ("both parties object to the Commissions' power generally, not to anything particular about how that power was wielded").

In *AFGE v. Trump*, this Court explained that the claims against OPM were "wholly collateral" because "Plaintiffs are not challenging … employment decisions with respect to individual employees. Rather, they are challenging Defendants' constitutional and statutory authority to *direct* [other] federal agencies to take such actions in the first place." 139 F.4th at 1031 (emphasis added). That is precisely the situation here. Plaintiffs do not seek review of claims that could first be adjudicated by the MSPB or FLRA at all.

For this reason, *AFGE v. Trump* correctly rejected the defendants' reliance on *Elgin* to support this factor. 139 F.4th at 1031 ("It is telling that in nearly every case cited by Defendants in which a court channeled a constitutional or statutory claim through the CSRA, the plaintiffs raised at least one claim properly within the unquestioned jurisdiction of the MSPB or FLRA," citing *Elgin*, 567 U.S. 1). In *Elgin*, the Court was reviewing claims challenging individual termination decisions

-41-

by an employing agency, and noted that there might be threshold legal or factual issues surrounding the claims of constructive discharge that could foreclose the need to consider more broadly applicable issues (like the constitutional challenge to the statute applied by the agency that the plaintiffs in *Elgin* wished to raise). *Elgin*, 567 U.S. at 22-23; *Axon*, 598 U.S. at 193. Unlike in *Elgin*, Plaintiffs' APA claims against OPM do not present any threshold legal or factual issues that are intertwined with the merits of claims under the CSRA against any employing agency that the MSPB or FLRA might hear.[22]  Thus, Plaintiffs' claims against OPM are "wholly collateral to [the CSRA's] review provisions."  *Axon*, 598 U.S. at 184-85.

3.  Issues raised are outside MSPB or FLRA expertise.

As to whether the issues presented by a claim are "outside the agency's expertise," *AFGE v. Trump* held that "the MSPB and the FLRA lack the relevant expertise, as well as the jurisdiction, to decide … Plaintiffs' statutory APA challenges," because those claims are not "intertwined with or embedded in

---

[22] In addition, the individual employees in *Elgin* complained that the statute pursuant to which they had been terminated was unconstitutional, but that claim *had* to be brought against the employing agency, because there was no other government entity against which to bring it.  Those employees could not, for example, have used the APA to sue *Congress* for enacting the offending statute. There was no broader agency decision-making or action to challenge except the decision to terminate them.  That is not so here.  *Elgin* therefore addressed an entirely different type of claim than that at issue here, where Congress has expressly created a cause of action in the APA that is triggered by the consummation of agency decision-making, including at the broad policy-level.  *See Bennett*, 520 U.S. at 177-78.

-42-

matters on which the [MSPB or FLRA] are expert." 139 F.4th at 1032 (quoting *Axon*, 598 U.S. at 195). The MSPB and FLRA have no more expertise to decide the APA claims in this case than they did to decide the "similar" claims in *AFGE v. Trump*. *Id.* at 1031-32.

In sum, based on the foregoing three-factor analysis, this Court concluded in *AFGE v. Trump* that "[a]ll three factors favor the Plaintiffs," and therefore that "Plaintiffs' claims were properly raised in [federal district] court." *Id.* at 1030-33. As explained above as to each factor, this case cannot meaningfully be distinguished. All three factors point in the same direction, for the same reasons.

4.    <u>Neither *Elgin* nor *Fausto* requires reversal.</u>

OPM continues to rely on the Supreme Court's decisions in *Elgin* and *United States v. Fausto*, 484 U.S. 439 (1988), which it contends hold that the CSRA and the FSLMRS establish an "exclusive" scheme for adjudicating claims involving "personnel actions taken against members of the civil service" or "disputes over federal labor-management relations." Opening Brief at 12-14. As OPM presents these cases, if a claim in any way relates to what OPM terms "the federal government's employment decisions," federal district courts necessarily lack jurisdiction to hear it. *Id*. at 15.

Neither *Elgin* nor *Fausto* sweeps as broadly as OPM contends. *Elgin* involved only "CSRA-covered employment actions brought by CSRA-covered employees requesting relief that the CSRA routinely affords." 567 U.S. at 22. *Fausto* addressed whether an individual "nonpreference excepted service"

-43-

employee, a category addressed by the CSRA, could sue his agency for backpay, notwithstanding the lack of remedy provided by Congress to this category of employee in the CSRA. 484 U.S. at 441-47. Neither case addresses or even contemplates preclusion of a claim challenging a government-wide action taken by an agency other than the one that directly employs a particular employee or is signatory to a collective bargaining agreement with a particular union.

Neither *Elgin* nor *Fausto* attempted to reconcile the CSRA with the APA; nor did they have any reason to do so. But Congress's treatment of the APA in the CSRA's express text compels a different outcome. As previously discussed, the same legislation that established the CSRA and FSLMRS administrative schemes also expressly made OPM's government-wide actions subject to the requirements of the APA. *Supra* at 7-8; 5 U.S.C. §§1103(b), 1105. The APA makes OPM's actions pursuant to these authorities expressly judicially reviewable in federal district court. 5 U.S.C. §§701-706; *see also Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 391-93 (2024) ("The text of the APA means what it says."). Nothing in *Elgin* or *Fausto* requires lower courts to agree that even though the CSRA subjected OPM's government-wide policymaking to the APA, it simultaneously foreclosed judicial review of any APA claims challenging OPM's government-wide policymaking. *See, e.g.*, *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018) ("A party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing 'a clearly expressed congressional intention' that such a result should follow."). That conclusion would

defy the Supreme Court's extensive precedent regarding the high hurdle for overcoming the presumption of APA judicial review discussed above, as most recently discussed in *McLaughlin*, 606 U.S. at 162. *Supra* at 30-31.

A similar conclusion follows from the FSLMRS's express exclusion of claims challenging government-wide action from the FLRA's jurisdiction. *See supra* at 35; 5 U.S.C. §7117(a)(1); *see also AFGE v. Trump*, Case No. 25-4014, 2026 WL 534591 at *5 (9th Cir. Feb. 26, 2026). As OPM reads *Fausto*, a congressional choice not to include a particular type of claim within the scope of a "comprehensive" scheme necessarily evinces a congressional intent to preclude all review of that claim, in any forum. *See* Opening Brief at 14; Case No. 25-1677, Dkt. 51.1 at 26; Case No. 25-1677, Dkt. 71.1 at 10-12. But Congress's choice to exclude claims challenging government-wide action from the FLRA's jurisdiction is more plausibly read as reflecting its intent to have such challenges adjudicated outside the FSLMRS and through the procedures of the APA, because Congress expressly deemed the APA applicable to government-wide action by OPM in the very same legislation. *Supra* at 5-8. That interpretation is foreclosed by neither *Elgin* nor *Fausto* (which did not consider such challenges at all) and is far more compatible with both the statutory text and the well-established presumption favoring judicial review, especially of government-wide agency action. *See, e.g.*, *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 383 (2012) ("[J]urisdiction conferred by 28 U.S.C. §1331 should hold firm against 'mere implication flowing from subsequent legislation.'"); *Bowen*, 476 U.S. at 674 ("The mere fact that some

-45-

acts are made reviewable should not suffice to support an implication of exclusion as to others. The right to review is too important to be excluded on such slender and indeterminate evidence of legislative intent.").

The Fifth Circuit's distinction of *Elgin* and *Fausto* in *Feds for Medical Freedom v. Biden*, 63 F.4th 366 (5th Cir. 2023) (en banc), *cert. granted, judgment vac'd on other grounds*, 144 S.Ct. 480 (2023)—previously cited by Plaintiffs, Case No. 25-1677, Dkt. 61.1 at 43—is particularly instructive. The plaintiffs in that case alleged that the Biden administration violated the APA when it imposed by Executive Order a mandate requiring federal employees across the government to take COVID-19 vaccines. 63 F.4th at 369. Employees who did not comply "face[d] termination." *Id.* There, as here, the entity responsible for the allegedly unlawful policy was not the employing agency, and "absent district court jurisdiction," the plaintiffs would have no "judicial recourse" against the responsible entity. *Axon*, 598 U.S. at 190. And there too, as here, the relevant agency action to be challenged became final when the Biden administration promulgated it—that is, plaintiffs did not have to wait until they were actually or imminently to be terminated by their particular employing agencies for there to be a judicially reviewable "final agency action" under the APA. *Bennett*, 520 U.S. at 177-78. Under *Axon*, both considerations reinforce the conclusion that the claims there at issue, like those at issue here, were not "of the type" that Congress intended to be channeled to the MSPB or the FLRA. 598 U.S. at 188-91. The

-46-

Fifth Circuit agreed, explicitly distinguishing *Elgin* and *Fausto*. *Feds for Medical Freedom*, 63 F.4th at 383.

As the Fifth Circuit in *Feds for Medical Freedom* and as this Court in *AFGE v. Trump* correctly recognized, individual employee claims challenging the application of an unlawful policy to that individual, and APA claims challenging the creation of that policy, are not the same claims. 63 F.4th 366; *AFGE v. Trump*, 139 F.4th at 1031. Congress has long granted anyone adversely impacted by unlawful federal action the ability to challenge the creation of those policies in court via the APA's prohibition on actions contrary to law, exceeding authority, arbitrary and capricious, or procedurally unlawful. 5 U.S.C. §706. Here, that express authority permits impacted employees, unions, and others to sue OPM for its unlawful directives, regardless of whether individual employees who wish to challenge their agency's covered employment actions should or should not address those claims to an administrative agency. Without the APA remedy against OPM, that agency remains free to impose unlawful directives across the federal government. The choice of whether to remove the APA avenue for immediate judicial review of unlawful OPM decisionmaking and the powerful APA remedy of vacatur, merely because the policies and directives in question involve the subject matter of federal employment, is a decision for Congress to make, not the courts. *Cf. Patchak*, 567 U.S. at 222–24.

OPM nevertheless contends that *Elgin* and *Fausto* require the district court to channel *any* claim *in any way* relating to "the federal government's employment

decisions."  Opening Brief at 15.  For reasons explained *supra*, that reading would flout both the statutory text and the applicable principles of statutory interpretation. *See Cmty. Legal Servs. in E. Palo Alto v. United States Dep't of Health & Hum. Servs.*, 137 F.4th 932, 939 (9th Cir. 2025) ("The result requested by the Government would mean that no court has jurisdiction to hear plaintiffs' claims. Not only is this result contrary to common sense, but it also conflicts with the 'strong presumption favoring judicial review of administrative action' that is embodied in the APA."); *Nat'l TPS All. v. Noem*, 166 F.4th 739, 756 (9th Cir. 2026) ("The assertion that a statute bars substantial statutory and constitutional claims is 'an extreme position.'") (quoting *Bowen*, 476 U.S. at 680-81).

OPM's argument also has no limiting principle.  If OPM's view were accepted, OPM could order the mass termination of federal employees on an undisputedly pretextual basis (as here), or promulgate new rules requiring termination of those who do not take certain vaccines (as in *Feds for Medical Freedom*), or order employees terminated for association with disfavored groups or speech—yet all challenges to such policies would be judicially unreviewable. Nothing in the CSRA sent *all employment-related, or even all termination-related issues* to the MPSB (or FLRA).  Rather, Congress chose to send a specific set of disputes to those agencies.[23]  The CSRA does not expressly or impliedly require

---

[23] Compare, for example, Congress' express language barring judicial review of the Secretary of Homeland Security's "determination" of Temporary Protected Status pursuant to 8 U.S.C. § 1254a(b)(5)(A), addressed by this Court recently in

the result advocated by OPM, and indeed, Congress' express statement subjecting OPM to the APA when it adopts government-wide policies precludes that result. *Supra* at 5-8.

### III. Plaintiffs' Claims Are Not Channeled Merely Because Some of the Relief Here Awarded Overlaps with Relief Sometimes Awarded by the MSPB and FLRA

OPM also argues that Plaintiffs' claims challenging OPM's government-wide action must be channeled because the relief sought, "including reinstatement and correction of personnel files, go[es] to the heart of the federal employer-employee relationship." Opening Brief at 13, 20.[24] That argument mischaracterizes the relief here sought and awarded, as well as applicable law.

First, it bears emphasis that the principal relief sought on summary judgment and granted by the district court was the APA remedy of holding action unlawful and setting it aside, 5 U.S.C. §706, and unwinding the effects of OPM's unlawful action. *See Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 522 (7th Cir.

---

*National TPS Alliance v. Noem*, 166 F.4th at 755. The CSRA includes no such language—or even anything remotely comparable to this *express* judicial preclusion provision. Indeed, the CSRA does not even send all federal employment-related disputes to the administrative agencies it established. Thus, disputes "outside the statute's scope" are best viewed as not precluded. *AFGE v. Trump*, 2026 WL 534591 at *5.

[24] OPM has repeatedly flip-flopped as to whether the claims of the employees at issue could be heard by the MSPB, and whether relief could be awarded. OPM argued to the district court twice that they could. 3-SER-669–672; *see also* 2-SER-509. Then, OPM admitted to this Court that they could not. Opening Brief at 14-17; Case No. 25-1677, Dkt. 51.1 at 24-29.

-49-

2021); *see also Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 830-31 (2024) (Kavanaugh, J., concurring) ("[T]his Court has affirmed countless decisions that vacated agency actions ... rather than merely providing injunctive relief that enjoined enforcement of the rules against the specific plaintiffs.") (collecting cases). The first two provisions of the permanent injunction were directed at OPM alone: (1) declaratory relief that its mass, pretextual termination was unlawful, and (2) an injunction prohibiting OPM from issuing any such unlawful order in the future. ER-42. As explained previously, neither the CSRA nor the FSLMRS authorizes *that* relief, and neither the MSPB nor the FLRA could have ordered it. *Supra* at 7-8.

It is true that Plaintiffs also sought and obtained ancillary relief requiring the correction of personnel files, as *part* of the remedy stamping out the effects of OPM's unlawful actions that the Court was setting aside under the APA. But "court[s] of equity conducting judicial review under the APA[] ha[ve] broad powers to order 'mandatory affirmative relief,' if such relief is 'necessary to accomplish complete justice.'" *Nw. Env't Def. Ctr. v. Bonneville Power Admin.*, 477 F.3d 668, 680-81 (9th Cir. 2007) (citations omitted); *see also Valcq*, 16 F.4th at 522 ("Vacatur [of agency action] retroactively undoes or expunges a past [agency] action….vacatur unwinds the challenged agency action."). As the district court here explained, OPM's indisputably unlawful mass termination order tarnished the reputations of affected employees by branding them with the stigma of having been fired for substandard performance, when their terminations were not in fact

-50-

performance-based, and the APA authorizes this incidental further relief. ER-10–12, ER-41; *supra* at 14.[25]

In any event, OPM's argument that Plaintiffs' claims are channeled because they seek relief that overlaps with relief that *could* be awarded to an individual employee by the MSPB or the FLRA suffers from a more fundamental problem: the argument has been explicitly rejected by the Supreme Court. In *Patchak*, 567 U.S. at 222–23, the Secretary of the Interior argued that the Quiet Title Act "impliedly preclude[d] judicial review" of a claim because the relief sought by that claim overlapped with the relief contemplated by the Act. The Secretary relied on precisely the same "implied preclusion" cases on which OPM here relies, including *Fausto* and *Block v. Community Nutrition Institute*, 467 U.S. 340, 347 (1984). *Patchak*, 567 U.S. at 222. But eight justices of the Supreme Court rejected the Secretary's argument. The Court explained:

> According to the dissent, we should look only to the kind of relief a plaintiff seeks, rather than the type of grievance he asserts, in deciding whether another statute bars an APA action… But the dissent's test is inconsistent with the one we adopted in *Block,* which asked whether Congress had particularly dealt with a "claim."

---

[25] In its appeal from the preliminary injunctions in this case, OPM argued that, even assuming that the district court had subject matter jurisdiction, some of the relief ordered by the district court exceeded the scope of the district court's authority. Case No. 25-1677, Dkt. 51.1 at 29-35. But OPM makes no such argument here. To the extent that the district court had jurisdiction to enter the declaratory and injunctive relief it entered against OPM, any scope-of-relief challenge to the ancillary relief entered against the relief defendants has been waived. *Supra* at 22 n.11.

*Id.* at 216 n.3.

It is the nature of the claim—not the precise contours of the relief sought or awarded—that determines whether a claim is channeled.  Here, as in *Patchak*, Plaintiffs have brought "a different claim, seeking different relief, from the kind the [CSRA and FSLMRS] address[]." *Id.* at 222. That some of the ancillary relief sought may overlap with relief sometimes awarded pursuant to a statutory scheme does not preclude jurisdiction.

## CONCLUSION

For the foregoing reasons, the district court's judgment should be affirmed.

DATED: March 13, 2026          Respectfully submitted,

Scott A. Kronland
Stacey M. Leyton
Eileen B. Goldsmith
Danielle E. Leonard
Robin S. Tholin
James Baltzer
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151

By: */s/ Eileen B. Goldsmith*

*Attorneys for Plaintiff Organizations*

Norman L. Eisen
Pooja Chaudhuri
STATE DEMOCRACY DEFENDERS
FUND
600 Pennsylvania Avenue SE #15180
Washington, DC 20003
Tel: (202) 594-9958

By: */s/ Norman L. Eisen*

*Attorneys for Plaintiff Organizations*

Rushab Sanghvi
AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES
80 F Street, NW
Washington, DC 20001
Tel: (202) 639-6426

By: */s/ Rushab Sanghvi*

-53-

*Attorneys for Plaintiff American Federation of Government Employees (AFGE)*

Teague Paterson
Matthew Blumin
AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES
1625 L Street, N.W.
Washington, D.C.  20036
Tel: (202) 775-5900

By: */s/Teague Paterson*

*Attorneys for Plaintiff American Federation of State County and Municipal Employees (AFSCME)*

Tera M. Heintz
Cristina Sepe
Cynthia Alexander
Deputy Solicitors General
OFFICE OF THE WASHINGTON STATE ATTORNEY GENERAL
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

By: */s/ Tera M. Heintz*

*Attorneys for Plaintiff State of Washington*

-54-

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this motion complies with Federal Rule of Appellate Procedure 27(d)(1)(E) because it is proportionally spaced and has a typeface of 14 points.  It contains 13,306 words, in compliance with the type-volume limitations of Circuit Rules 27-1(1)(d), 32-3(2), and 32-2(b), as a joint brief submitted by the separately represented parties of Plaintiff Organizations and the State of Washington.

Dated: March 13, 2026

*/s/ Eileen B. Goldsmith*
Eileen B. Goldsmith